COMMUNICATION EQUIPMENT AND CONTRACTING CO., INC., Plaintiff,

v.

MUNICIPALITY OF ANCHORAGE, ALASKA, Defendant.

Civ. A. No. 80–132–N.

United States District Court, M. D. Alabama, N. D.

Sept. 22, 1980.

Oakley Melton, Jr., Melton & Espy, Montgomery, Ala., for plaintiff.

Walter R. Byars, Wanda D. Devereaux, Steiner, Crum & Baker, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

This case is now before the Court on defendant's motion to dismiss plaintiff's cause of action for failure to state a claim upon which relief can be granted, lack of personal jurisdiction over the defendant, and improper venue. Upon a review of the pleadings and for the reasons set out below, this Court is of the opinion that defendant's motion to dismiss should be denied.

The primary point of contention raised by this motion to dismiss has been this Court's power to exercise personal jurisdiction over the defendant. The Court is of the opinion that this jurisdictional issue is the sole question meriting any discussion.

### FACTS

Beginning sometime in October of 1975 and continuing for almost two years thereafter, the defendant in this action, the Municipality of Anchorage, Alaska, carried on an investigation of possible ways to modernize the emergency telephone answering service then in use in that city. Inquiries of various suppliers and manufacturers of the appropriate equipment were made by employees of the city. The plaintiff in this action, Communication Equipment and Contracting Co., Inc. (hereinafter referred to as "CEAC"), was among those manufacturers and suppliers contacted by the defendant. CEAC is an Alabama manufacturing concern engaged in the production and sale of communications equipment.

Following an initial inquiry by the defendant city, CEAC began to promote its products for sale to the city. Agents of

CEAC visited Anchorage to explain in person the advantages of a CEAC system. Telephone calls were made between the parties. Letters were written. During the period from April 1978 to May 1978, at least two detailed proposals for the sale were made by CEAC. The parties continued to discuss these proposals by telephone during the summer of 1978. Finally, on September 26, 1978, the Anchorage Assembly approved funds for the purchase of the CEAC system. The plaintiff was notified of this action by the Anchorage Assembly sometime after September 26. The exact date of this notification remains in dispute.

In early October of 1978, Mr. Charles Peck, manager of customer services for the telephone division of the defendant city, visited the plaintiff's manufacturing plant in Union Springs, Alabama. The purpose of Mr. Peck's visit was "to look over" the CEAC facilities in Alabama. While touring the plaintiff's manufacturing plant, Peck and CEAC officials engaged in further discussions regarding the contract between CEAC and Anchorage. At this same time, Mr. Peck placed a long distance call from Union Springs, Alabama to Anchorage, Alaska in order to obtain further information about plaintiff's contract with Anchorage.

Shortly after Mr. Peck's October visit, plaintiff began to manufacture the emergency telephone answering system ordered by Anchorage. During the course of the manufacturing process, defendant made periodic progress payments by mail to plaintiff's office in Alabama. As plaintiff completed each installment of defendant's order, it placed the equipment with a common carrier in Alabama for shipment to Anchorage. The terms of the shipment were "F.O.B. Alabama."

After delivery and installation of most of the system, defendant sought assurances from plaintiff that the system would operate properly. Defendant then notified plaintiff that it would not accept the final shipment of equipment and would not allow plaintiff's engineer to supervise final installation and testing of the system.

Plaintiff CEAC has now sued Anchorage for the amount still owing on the contract. In response to this suit, Anchorage filed the motion to dismiss now before the Court.

## CONCLUSIONS OF LAW

Jurisdiction in this case is based upon the diverse citizenship of the parties. That being the case, the well settled rules of *Erie* dictate that we begin our inquiry with a consideration of Alabama's "long arm" statute, now set forth in Rule 4.2 of the Alabama Rules of Civil Procedure.

Rule 4.2 provides, in pertinent part:

Appropriate basis exists for service of process outside of this state upon a person in any action in this state when

\* \* \* \* \* \*

(B) the person has sufficient contacts with this state, as set forth in subdivision (a)(2) of this rule, so that the prosecution of the action against the person in this state is not inconsistent with the constitution of this state or the Constitution of the United States ....

(2) *Sufficient Contacts.* A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's

(A) transacting any business in this state;

\* \* \* \* \* \*

(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)–(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.

The Alabama Supreme Court and the Fifth Circuit Court of Appeals have held

that the scope of substituted service under this rule is coextensive with the limits of due process under the Fourteenth Amendment to the United States Constitution, *Semo Aviation, Inc. v. Southeastern Airways*, Ala., 360 So.2d 936 (1978); *Schoel v. Sikes Corp.*, 533 F.2d 930 (5th Cir. 1976). The question of due process is, therefore, a federal question. In seeking to define the requirements of due process applicable in this case, the Court must turn to the decisions of the United States Supreme Court and to interpretations of those decisions by lower federal courts.

In *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court offered a guiding principle to be followed in determining whether the assertion of jurisdiction over an out-of-state defendant comports with federal due process requirements:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

In the years following *International Shoe*, the Supreme Court has attempted to define further the modern requirement of "minimum contacts." See, e. g., *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). These decisions establish a test of personal jurisdiction which turns ultimately on concepts of "reasonableness" and "fairness" and "traditional notions of fair play and substantial justice." Such concepts are helpful guideposts, but they do not lend themselves to an easy, mechanical application. The Court must carefully consider the facts of each individual case in making its determination. As the Fifth Circuit said in a recent decision: "[W]e reaffirm the principle that, in the

determination of whether a foreign corporation should be required to defend itself ... each case must be decided on its own facts.... [but] guiding principles may be found in the facts of other cases." *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.*, 622 F.2d 149, 151 (5th Cir. 1980).

The recent decision in *Hudco* involved a suit by a Texas printer against an Alabama distributor of telephone directories. The Texas plaintiff brought its suit in federal district court in Texas. The Alabama defendant made a motion to dismiss on the grounds that the Texas court lacked personal jurisdiction to hear the dispute. The district court granted defendant's motion, dismissing the suit for want of jurisdiction. On appeal, the Fifth Circuit reversed.

The facts in *Hudco* are similar in several important ways to those of *CEAC*. Each case involves a suit on a contract brought by a seller in its home state against an out-of-state purchaser. *Hudco* involved several contracts to print telephone directories. *CEAC* involves a contract for the sale of a telephone answering system with periodic and multiple shipments over a prolonged period of time.

The degree of contact between the out-of-state defendant and the forum attempting to assert jurisdiction seems comparable in each case. In *Hudco*, the process of procuring telephone directories required that the Alabama defendant mail copies of the proposed directories to the Texas printer and then proofread the printed versions upon their return. Likewise, in the *CEAC* case, the defendant buyer communicated on a regular basis with the plaintiff seller. In the affidavits offered by the defendant, employees of the city repeatedly refer to written correspondence and telephone conversations that occurred between the parties during a relatively long negotiation period. During the course of this negotiation period, CEAC submitted at least two proposals for the sale of telephone equipment. The affidavits make clear that these proposals were the subject of numerous discussions between the parties.

Other similarities exist between the two cases. As with the plaintiff in *Hudco*, CEAC shipped the goods "F.O.B." seller's place of business. The risk of loss thus passed to the buyer in the forum now asserting jurisdiction. As with the defendant in *Hudco*, Anchorage also made periodic payments to the plaintiff in its home state. Finally, in each case, the law of the forum now asserting jurisdiction is likely to apply wherever the case is eventually tried. In *Hudco*, this is the case because a substantial part of the performance of the contracts occurred in Texas. In *CEAC*, such will likely be the case for the same reason and also because of a "governing law" provision contained in the contract. The court in *Hudco* suggested that the expectation of an out-of-state defendant that the law of the plaintiff's home state will apply in the event of any subsequent contract dispute makes the assertion of personal jurisdiction over that defendant by a court of the plaintiff's home state more reasonable.

On the facts as outlined above, the Fifth Circuit found the Alabama defendant in *Hudco* subject to the personal jurisdiction of the Texas court. The court concluded:

> Hudco . . . was no mere passive customer of a Texas corporation. Hudco repeatedly placed orders with the Texas corporation for the "manufacture" of telephone directories, from which Hudco expected to profit, and Hudco several times mailed camera-ready copy and proofs to Texas in order to facilitate the manufacturing process. *Hudco*, 622 F.2d at 152.

The facts distinguishing *Hudco* from the situation now under consideration only serve to reinforce the correctness of asserting personal jurisdiction in this case. Here, Anchorage made the initial contact with the Alabama seller. In *Hudco*, the plaintiff took the initiative from the outset and made the initial contact in Alabama. In addition, a representative of the City of Anchorage actually visited the plaintiff's manufacturing plant in Union Springs, Alabama. While in Alabama, this representative discussed the sales contract between the two parties and communicated with the defendant by phone regarding its contract with the plaintiff. In contrast to these activities, the defendant buyer in *Hudco* never once sent anyone associated with its organization into the home state of the seller. In short, the case in favor of the Court exercising jurisdiction over the non-resident defendant in this case seems at least as strong as the argument accepted so recently by the Court of Appeals for the Fifth Circuit.

As already noted, the law in this area dictates that the Court consider carefully the facts of each individual case in deciding whether the assertion of personal jurisdiction is consistent with the commands of due process. A general test has evolved which requires the existence of "minimum contacts" between defendant and forum state. The test also requires an inquiry into the "fairness" of the assertion of jurisdiction over a particular out-of-state defendant. The *Hudco* court followed this two pronged standard in concluding that the assertion of jurisdiction over the out-of-state defendant satisfied the commands of due process in that case. Other Fifth Circuit decisions have adopted a similar formulation See *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974).

In applying this formula to the facts at hand, this Court concludes that the out-of-state defendant does have "minimum contacts" with the forum asserting jurisdiction sufficient to satisfy the requirements of the due process clause. In this case, Anchorage made the initial contact with CEAC; Anchorage then engaged in lengthy bilateral contract negotiations with CEAC regarding the sale of a complicated telephone system; following these negotiations, one of the defendant's agents visited plaintiff's manufacturing plant in Alabama, inspecting plaintiff's manufacturing facilities, and while there took part in further discussions regarding the contract. The defendant has, in short, engaged in the affirmative, purposeful activity necessary to establish "minimum contacts" with the plaintiff's forum.

Finally, we note that there has been no persuasive showing by the defendant that

the resolution of this dispute by an Alabama court would increase the defendant's burden disproportionately. The finding of the court in *Hudco* that "it would be just as inconvenient for Southwest to litigate in Alabama as it would be for Hudco to litigate in Texas" is even more apparent in this case. In *Hudco*, the Texas company maintained a sales force in Alabama. CEAC has no such contact with Alaska.

The court in *Hudco* made a further observation that is relevant here. "Hudco has pointed to no particular inequity that would result if a court in Texas exercises jurisdiction over its person in this suit." 623 F.2d at p. 153.

For all of the above reasons, the Court concludes that defendant's motion to dismiss should be denied. An order will be entered in accordance with this opinion.