**Stefan LUKASZUK, Plaintiff,**

v.

**Alexander HAIG, Secretary of State of the United States of America, Defendant.**

**No. 80 C 6169.**

United States District Court, N. D. Illinois, E. D.

Sept. 21, 1981.

**1030**

Mark Green, Horn & Israel, Chicago, for plaintiff.

Mary Anne Mason, Asst. U.S. Atty., Chicago, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Stefan Lukaszuk ("Lukaszuk") brought this action against Secretary of State Alexander M. Haig, Jr. ("the Secretary") in order to challenge regulations promulgated by the Secretary that set forth procedures by which a non-immigrant alien temporarily resident in the United States may secure an adjustment of his or her status to that of a permanent resident. *See generally*, 8 U.S.C. § 1255; 22 C.F.R. §§ 42.110 and 42.110–2.2 *et seq.* Lukaszuk claims that the regulations and the manner in which the Secretary has implemented them deprive him of due process of law in violation of the Fifth Amendment to the United States Constitution. Jurisdiction is premised upon 28 U.S.C. §§ 1331, 1332, and 8 U.S.C. § 1329.

This matter is presently before the Court on the Secretary's motion for summary judgment pursuant to Fed.R.Civ.P. 56. In this context, Lukaszuk is entitled to every reasonable inference that may be drawn from the evidence in his favor and the

Secretary cannot prevail unless he can show that there is no dispute as to any genuine issue of fact material to a judgment in his favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979).

The essential facts are not disputed. Lukaszuk came to this country from his native Poland on September 3, 1974, as a non-immigrant alien visitor. He subsequently secured employment here as a workman with the Chicago Vacuum Casting Corporation. His employer petitioned for and received a labor certification on Lukaszuk's behalf from the Secretary of Labor on January 4, 1977, pursuant to 8 U.S.C. § 1182(a)(14). Its petition to secure sixth preference status for Lukaszuk was approved by the Immigration and Naturalization Service ("INS") on October 28, 1977.[1] Lukaszuk's application for adjustment of his status to that of a permanent resident was denied by the INS, however, because he had engaged in employment in this country without INS approval after January 1, 1977, and before he filed his application for adjustment of the status of his residency.[2] Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255 (1979), provides that the Attorney General may, in his discretion and pursuant to such regulations as he may prescribe, adjust the status of a non-immigrant alien to that of permanent resident if the alien applies for such adjustment and is currently eligible to receive an immigration visa. 8 U.S.C. § 1255(a). Although Lukaszuk apparently satisfied these requirements, paragraph (c) of section 245 states

that the provisions of paragraph (a) are not applicable to "an alien ... who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status." 8 U.S.C. § 1255(c)(2).[3]

An alien who is statutorily ineligible for adjustment of status under 8 U.S.C. § 1255(c) generally must return to his or her country of origin in order to apply for a visa entitling him or her to permanent residency status in the United States. 22 C.F.R. § 42.110 (1980). However, if the alien is a refugee, an immediate relative (spouse, child under the age of 21, or parent) of an American citizen, or is entitled to first or second preference status,[4] she is eligible for "stateside criteria processing" pursuant to regulations promulgated by the Secretary. 22 C.F.R. § 42.110–2.2 *et seq.* (1979). Aliens who qualify for stateside criteria processing can apply to American Consular offices in Canada for immigrant visas entitling them to permanent residency in the United States. American consuls in Canada may elect to process applications of aliens who do not otherwise qualify for stateside criteria processing at their discretion depending upon the workload at the consul. 22 C.F.R. § 42.110–2.32. An alien may also qualify for stateside criteria processing by seeking asylum in this country.

Lukaszuk, who has been accorded sixth preference status and is thereby ineligible for stateside criteria processing pursuant to 22 C.F.R. § 42.110–2.22(c), has been refused discretionary processing by at least two American consuls in Canada because of the

1. Sixth preference status indicates that the alien is "capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6). Classification in one of the six categories of preference listed in 8 U.S.C. § 1153(a) is an initial step in the process by which aliens may become eligible for an immigration visa or adjustment to permanent residency status. Preferred status, however, does not in any way guarantee that the alien will not be deported or that he will ultimately be issued an immigration visa.

2. Lukaszuk does not dispute the determination that he had accepted and maintained employment prior to filing his petition for adjustment of his status to permanent residency.

3. This provision relating to unauthorized employment was added by the 1976 amendments to the Act and it became effective on January 1, 1977.

4. First preference aliens are unmarried sons and daughters of United States citizens. Second preference aliens are unmarried sons and daughters of aliens lawfully admitted for permanent residence status. 8 U.S.C. § 1153(a)(1) and (a)(2).

heavy workload involved in processing refugees, immediate relatives of American citizens, and aliens classified in the first and second preferences. He has thus far refused to apply for asylum in this country out of fear for his family in Poland should the Polish government learn of this application. Thus, Lukaszuk is foreclosed from obtaining an adjustment of his status to that of a permanent resident unless he either seeks asylum, returns to Poland as his country of origin and makes his application at the American consul in that country,[5] or until such time as an American consul in Canada chooses to exercise its discretion and process his application for permanent residency.

Lukaszuk contends that the regulations relating to stateside criteria processing are unconstitutional on both due process and equal protection grounds [6] because they arbitrarily extend the option of stateside criteria processing to certain categories of aliens while denying that option to others. He seeks a declaration that the regulations are unconstitutional and a writ of mandamus directing the Secretary to make stateside criteria processing available to all aliens who have been issued an approved preference petition in accordance with 8 U.S.C. § 1153(a).

■ As a threshold matter, the Secretary contends that the exercise of federal jurisdiction would be premature in the instant case because Lukaszuk has not exhausted the administrative remedies available to challenge the finding that he is statutorily ineligible for adjustment of status under 8 U.S.C. § 1255. The Secretary also maintains that there is no case or controversy at the present time since Lukaszuk has not

been aggrieved by agency action either by the issuance of a final deportation order or the denial of asylum. However, Lukaszuk concedes for the purposes of this case that he is statutorily ineligible for adjustment of status under 8 U.S.C. § 1255(c) so that it would be fruitless for him to avail himself of the administrative remedies afforded for the purpose of challenging that finding at this time. In such circumstances, there is no requirement that he exhaust his administrative remedies before invoking the jurisdiction of this Court. *Continental Can Company v. Marshall*, 603 F.2d 590, 597 (7th Cir. 1979). In the Court's view, there is a line dispute between the parties at this time with respect to the validity of the stateside criteria processing regulations, and Lukaszuk has a sufficient stake in the outcome of the controversy to challenge the regulations as applied to persons in his position. He need not wait until he is finally deported or denied asylum in order to litigate the constitutionality of the Secretary's regulations.[7] Accordingly, we proceed to the merits of the case at bar.

The Supreme Court has long recognized the limited scope of judicial inquiry in matters involving Congressional or Executive action in the immigration area. *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977); *Mathews v. Diaz*, 426 U.S. 67, 77–84, 96 S.Ct. 1883, 1890–93, 48 L.Ed.2d 478 (1976); *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). As the Supreme Court stated in *Kleindienst v. Mandel, supra*:

The power of Congress to exclude aliens altogether from the United States, or to

---

5. Lukaszuk maintains that a question exists as to whether he would be allowed to immigrate to this country from Poland if the American consul in Poland approved his application for permanent residence and a visa number is issued to him thus precluding entry of summary judgment at this juncture. As evidenced by the discussion in the text hereafter, however, this fact is irrelevant to the issue of the constitutionality of the stateside criteria processing regulations.

6. There is no dispute that the fifth amendment as well as the fourteenth amendment protects

all aliens, whether in this country lawfully or unlawfully, from deprivation of life, liberty or property without due process of law. *Mathews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 48–51, 70 S.Ct. 445, 453–55, 94 L.Ed.2d 616 (1950).

7. We do note, however, that an order to show cause why Lukaszuk should not be deported was issued on March 17, 1980, and his application for asylum was deemed abandoned on October 29, 1980.

prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications. 408 U.S. at 766, 92 S.Ct. at 2583. Courts have been particularly reluctant to interfere in the visa-issuing process as an area uniquely within the discretion of the Secretary or the Attorney General. *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978); *Gomez v. Kissinger*, 534 F.2d 518, 519 (2d Cir. 1976). Although Congress and the Executive departments do not act with carte blanc in this area, the Supreme Court has recognized that they "regularly make[ ] rules that would be unacceptable if applied to citizens," *Mathews v. Diaz, supra*, 426 U.S. at 80, 96 S.Ct. 1891, as an indication of the scope of their powers in the context of the immigration and naturalization laws.

■ In this context, the Court cannot say that the stateside criteria processing regulations promulgated by the Secretary are either so arbitrary or so invidiously discriminatory between classes of aliens as to offend principles of due process or equal protection embodied in the fifth amendment. The stateside criteria processing regulations arise out of an informal arrangement between the United States and Canada whereby aliens may enter Canada for the limited purpose of presenting an application for an immigrant visa at an American consulate in that country. *See generally*, 2 Gordon and Rosenfield, Immigration Law and Procedure § 7.3(b) (1979).[8] The restrictions upon the classes of aliens that may take advantage of this convenient form of processing reflect both diplomatic and practical concerns. It is unlikely that Canada would be willing to allow an unlimited number of aliens across its borders for the purpose of obtaining immigrant visas to the United States. Thus, the regulations afford stateside criteria processing to those classes of aliens who reasonably might be most in need of such an option in order to avoid extreme hardship, *i. e.*, refugees, immediate relatives of United States citizens (spouses, young children, or parents of children over 21 years of age), and first and second preference aliens (unmarried sons or daughters of citizens or permanent residents). Aliens like Lukaszuk who have been afforded sixth preference status because of their ability to perform skilled or unskilled labor are not altogether denied the option of stateside criteria processing. Their ability to take advantage of the program, however, is conditioned upon the workload of the American consulate in Canada and the discretion of the consular officers. Even if this Court had the power to compel the exercise of discretion to allow all aliens with some preferred status the option of stateside criteria processing, the relief sought by Lukaszuk,[9] we would be extremely reluctant to do so in view of the reasonableness of the present system.

The Supreme Court has noted that the process of drawing lines to determine eligibility for particular benefits "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line; the differences between the eligible and the ineligible are differences in degree rather than differences in the character of their respective claims." *Mathews v. Diaz*, 426 U.S. 67, 83–84, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478 (1976). The Court cannot say that the lines drawn with respect to the stateside criteria processing program offend principles of due process or equal protection guaranteed to aliens as well as to citizens under the fifth amendment.

---

**8.** Gordon and Rosenfield also note that American consulates in Mexico or other nearby countries may be willing to process an application for an immigrant visa of an alien in the United States provided that their workload allows this flexibility. They recommend that an interested person in the United States should direct an inquiry to the appropriate American consul in a nearby country. *See* Gordon and Rosenfield, Immigration Law and Procedure § 7.3b at 7–39–7–40 (1979).

**9.** The Seventh Circuit has consistently held that mandamus will not lie to compel the performance of a clearly discretionary act. *See Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir. 1978) and cases cited therein.

Accordingly, the Secretary's motion for summary judgment is granted. It is so ordered.