**HYDROKINETICS, INC.,**
Plaintiff-Appellant,

v.

**ALASKA MECHANICAL, INC.,**
Defendant-Appellee.

No. 82–1123.

United States Court of Appeals,
Fifth Circuit.

March 21, 1983.

Rehearing Denied April 27, 1983.

Hudson, Keltner, Smith, Cunningham & Payne, Donald E. Herrmann, Fort Worth, Tex., for plaintiff-appellant.

Godfrey, Decker, McMackin, Shipman, McClane & Bourland, John B. McClane, Fort Worth, Tex., for defendant-appellee.

Before WISDOM, REAVLEY and TATE, Circuit Judges.

WISDOM, Circuit Judge:

The question we are asked to decide in this case is whether the exercise of jurisdiction over the person of the defendant under Texas law comports with the basic due process requirements of the United States Constitution. We conclude that it does not, and affirm.

## I.

The appellant in this contract dispute, Hydrokinetics, Inc. is a manufacturing concern organized and existing under the laws of the state of Texas. The appellee, Alaska Mechanical, Inc., is an Alaska corporation engaged in the business of construction contracting. It specializes in the mechanical area, and works exclusively on projects within the state of Alaska. Alaska Mechanical is not licensed to do business in Texas, and has no offices, agents, or employees there.

Alaska Mechanical bid on, and was later awarded, a mechanical subcontract for the United States Navy at Adak, Alaska, which called for it to furnish and install certain waste heat recovery silencer units. Alaska Winter, a manufacturer's representative in Alaska soliciting orders for Hydrokinetics's products, communicated to Alaska Mechanical that Hydrokinetics was interested in supplying these units. Alaska Winter initially brokered all communications between the parties, but the actual contract negotiations were conducted directly between Alaska Mechanical, in Alaska, and Hydrokinetics, in Texas, by telex, telephone and letter. While negotiations were underway, two officers of Alaska Mechanical visited Hydrokinetics's plant to inspect the equipment and facilities.[1] The parties later entered into a final agreement which provided that Hydrokinetics would manufacture and deliver to Alaska Mechanical five waste heat recovery silencer units. This agreement took the form of an Alaska Mechanical purchase order, with attached provisions, executed by both parties. The contract stipulated that it was to be governed and construed according to the laws of the state of Alaska.

The waste heat recovery silencer units manufactured by Hydrokinetics were shipped to Seattle, Washington, and later transported to the United States Navy facility at Adak, Alaska. Alaska Mechanical notified Hydrokinetics that in its opinion the goods were unsuitable, and that it was rejecting them. Hydrokinetics sued Alaska Mechanical in federal district court in Texas for breach of contract. Subject matter jurisdiction was based on diversity of citizenship. Hydrokinetics contended that the goods were suitable and had been accepted by Alaska Mechanical.

The district court found that while Hydrokinetics did make a prima facie showing on the facts of jurisdiction,[2]

> when this Court's attention turned to the constitutional considerations of fair play and substantial justice, *International Shoe Co. v. Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945), it is determined it would not be fair and reasonable to require Alaska Mechanical, Inc., as Defendant, to come into Texas and defend this action considering the lack of purposeful activity by the Defendant to avail itself of the privilege of conducting activities within Texas, and to invoke the benefits and protections of its laws. *See Alchemie Intern, Inc. v. Metal World, Inc.,* 523 F.Supp. 1029 [1039] (D.N.J.1981); *Communication Equip v. Municipality of Anchorage,* 498 F.Supp. 632 (M.D.Ala.N. D.1980).

Concluding that "the Defendant never made any calculated effort to engage in or solicit business in Texas with a Texas company nor had any expectation of extracting

1. After the delivery of the waste heat recovery silencer units, two officers of Alaska Mechanical and Alaska Mechanical's Alaska counsel met with representatives and counsel of Hydrokinetics in Texas to discuss problems related to the design, construction, and capabilities of the subject waste heat recovery silencer units.

2. The district court cited that portion of *Product Promotions v. Cousteau,* 5 Cir.1974, 495 F.2d 483, 490–91, where we stated:

> In order to make a prima facie showing of the facts on which jurisdiction was predicated under the contract portion of the [Texas Long-Arm Statute], ... appellant had to present prima facie evidence that (1) a contract to be performed in whole or in part [by either party] within Texas existed between itself and appellees and (2) the present suit arose out of that contractual agreement.

profits"[3] the court granted Alaska Mechanical's motion to dismiss. Our review is limited to the propriety of the district court's finding that it lacked jurisdiction over the person of the defendant.

## II.

■ In *Product Promotions, Inc. v. Cousteau,* 5 Cir.1974, 495 F.2d 483, 489, this Court held that "[t]he power of a federal court entertaining a suit based on diversity of citizenship to exercise jurisdiction over the persons of non-resident defendants turns on two independent considerations. The law of the state in which the federal court sits must confer jurisdiction over the persons of the defendant, and if it does, the exercise of jurisdiction under state law must comport with basic due process requirements of the United States Constitution". This appeal involves only the latter consideration.[4] In determining whether constitutional due process requirements have been met when a state exercises jurisdiction over the person of a nonresident defendant, we apply a two-pronged test. The "[d]efendant must have some minimum contacts with the state resulting from an affirmative act or acts on its part, and it must not be unfair or unreasonable to require the nonresident defendant to defend the suit in the forum." *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 5 Cir. 1980, 622 F.2d 149, 152 (*citing Product Promotions,* 495 F.2d at 494).

■ Although jurisdiction over the person of a defendant may be predicated on a single purposeful act of the defendant,[5] "in the determination of whether a foreign corporation should be required to defend itself in a suit in Texas arising out of a contract between it and a Texas corporation, each case must be decided on its own facts." *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d at 151. The

number of contacts with the forum state is not, by itself, determinative. "What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." *Brown v. Flowers Industries, Inc.,* 5 Cir.1982, 688 F.2d 328, 333 (*citing Quasha v. Shale Dev. Corp.,* 5 Cir. 1982, 667 F.2d 483, 488). "Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, relate to whether it can be said that the defendant's actions constitute 'purposeful availment.[']" *Prejean v. Sonatrach, Inc.,* 5 Cir.1981, 652 F.2d 1260, 1268. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1297. "The second prong, or 'fairness' factor, requires the court to consider, among other things, the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d at 152.

■ Hydrokinetics does not contest Alaska Mechanical's general lack of contact with the state of Texas; it focuses instead on the facts surrounding the formation of the contract at issue in this case. In support of its contention that Alaska Mechanical purposefully availed itself of the benefits and protections of Texas laws, Hydrokinetics points to the following: (1) Alaska Mechanical agreed to purchase specific goods to be manufactured in Texas; (2) payment for these goods was to be made in Texas; (3) before any written agreement

---

**3.** The district court also noted that the contract provided that it was to be governed by Alaska law.

**4.** This consideration is governed by federal law. *Brown v. Flowers Industries, Inc.,* 5 Cir.1982, 688 F.2d 328, 332; *Terry v. Raymond Int'l, Inc.,* 5 Cir.1981, 658 F.2d 398, 401, *cert. denied,*

1982, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443; 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075 at 316 (1969).

**5.** *See, e.g., McGee v. International Life Ins. Co.,* 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

was signed, extensive communications occurred between the parties, originating in Texas and Alaska; (4) officers of Alaska Mechanical traveled to Texas to "close" the deal; and (5) the contract was formally created in Texas because that was the place of the acceptance of Alaska Mechanical's offer by Hydrokinetics.

Several other facts, however, are relevant to an analysis of Alaska Mechanical's activities in this case. Alaska Mechanical does not regularly engage in business in Texas or in any state other than Alaska. Its sole contact with the state of Texas is the single, isolated transaction involved in this case, and that transaction was initiated by and substantially negotiated with the seller's representative in Alaska. The agreement entered into by Alaska Mechanical expressly provided that it was to be governed and construed according to Alaska law. The waste heat recovery silencer units were delivered by Hydrokinetics to Alaska Mechanical in Seattle, Washington.

We agree with the district court's conclusion that Alaska Mechanical did not purposefully avail itself of the privilege of conducting business within Texas or invoke the benefits and protections of Texas law. Although it did agree to purchase goods which it knew were to be manufactured by Hydrokinetics in Texas, no performance by Alaska Mechanical was to take place in Texas, other than perhaps the payment for the goods. We do not believe that the unilateral activity of Hydrokinetics in Texas satisfies the requirement of contact between Alaska Mechanical and the state of Texas. *See Hanson v. Denckla, supra.*[6] Nor do we weigh heavily the fact that Alaska Mechanical may have mailed payment checks into the forum state in exchange for the goods. *See U-Anchor Advertising, Inc. v. Burt,* Tex.1977, 553 S.W.2d 760, 762, *cert. denied* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). Yet we do consider significant that only a single transaction is involved in this case, governed by Alaska law, which is the defendant's sole contact with the forum state. The only performance in Texas was that of the plaintiff, with delivery by Hydrokinetics taking place in the state of Washington. As for the exchange of communications between Texas and Alaska in the development of the contract, that in itself is also insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws. *See Benjamin v. Western Boat Building Corp.,* 5 Cir.1973, 472 F.2d 723, 729, *cert. denied,* 1973, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64. *Accord, Charia v. Cigarette Racing Team, Inc.,* 5 Cir.1978, 583 F.2d 184, 187–88. That officers of Alaska Mechanical twice traveled to Texas to inspect Hydrokinetics's facilities and to resolve the dispute between the parties is relevant, but in this case we do not find it is sufficient to alter the basic quality and nature of Alaska Mechanical's contact with the state of Texas. Although the bargain may have been cemented in Texas when Hydrokinetics accepted Alaska Mechanical's offer, the significance of that is diminished by the provision specifying that the agreement be governed and construed according to the laws of the state of Alaska. We do not hold that the facts relied on by Hydrokinetics in support of its contention that the district court in Texas has jurisdiction over the person of the defendant are not relevant to the determination; we merely conclude that, considering the totality of the facts of this case, the necessary

---

6. Justices White and Powell dissented to the denial of certiorari in *Lakeside Bridge & Steel Co. v. Mountain State Const. Co.,* 1980, 445 U.S. 907, 909, 100 S.Ct. 1087, 1088, 63 L.Ed.2d 325, and noted that "the question of personal jurisdiction over a nonresident corporate defendant based on contractual dealing with a resident plaintiff has deeply divided the federal and state courts."

A particularly thoughtful opinion in which jurisdiction was found in a case factually similar to this one is *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 6 Cir.1972, 466 F.2d 220. Without expressing an opinion as to how we would decide that case were it before us, we note that it is distinguishable from our case in that it involved a nonresident defendant engaged in substantial interstate business. *Id.* at 234. *See Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.,* 5 Cir.1980, 623 F.2d 375; *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 5 Cir.1982, 681 F.2d 1003.

inference of purposeful availment is not supported.

Hydrokinetics finds support for its position in *Product Promotions, Inc. v. Cousteau,* 5 Cir.1974, 495 F.2d 483, and *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 5 Cir.1980, 622 F.2d 149. Although guiding principles may be found in these and other cases, we note several distinctions. In *Cousteau,* the defendant, CEMA, a foreign corporation, entered into a contract to conduct tests of a "fish call" device manufactured by the plaintiff, a Texas corporation, and to mail to the plaintiff in Texas a series of reports and films for its use in television and other advertising promotions. We held that CEMA's activities were adequate to support an inference of an affirmative, purposeful decision by CEMA to avail itself of the privilege of conducting business in Texas, where the transaction was consummated in Texas and required performance by CEMA (the delivery of the product which was the subject of the contract) in Texas. In *Cousteau,* the contract made no mention of the law to be applied, and thus the place where the contract was completed was relevant to the reasonable foreseeability that "enforcement and protection of [defendant's] own rights under the contract might depend on the laws of Texas." 495 F.2d at 497.[7] Here, however, the contract expressly provided that it was to be governed and construed according to Alaska law. Even more important to the holding in *Cousteau,* was that "an integral, essential portion of *CEMA's* performance, delivery of the results in satisfactory form, had to take place in Dallas." *Id.* at 496 (emphasis added). No such performance in Texas was required of Alaska Mechanical under its contract with Hydrokinetics.

In *Southwest Offset,* the defendant, Hudco Publishing, an Alabama company operating in Alabama and Mississippi, placed a series of orders with Southwest, a Texas corporation, "for the 'manufacture' of tele-phone directories." *Southwest Offset,* 622 F.2d at 152. While the initial order was placed with the plaintiff's sales representative, which had solicited Hudco's business, in Alabama, subsequent orders were placed by Hudco either in writing or by telephone. Payments were mailed by Hudco to Dallas, as were camera-ready copy of the telephone directories. The books were printed in Texas and shipped to Hudco f.o.b. Dallas. In determining whether the district court in *Southwest Offset* had jurisdiction over the person of the defendant, this Court contrasted the *Cousteau* case with a Texas Supreme Court case, *U-Anchor Advertising, Inc. v. Burt,* Tex.1977, 553 S.W.2d 760, *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). There the defendant's *only* Texas activity consisted of mailing checks from his place of business in Oklahoma to Amarillo, and the Texas Supreme Court found that the exercise of in personam jurisdiction over the defendant would be offensive to due process. *U-Anchor,* 553 S.W.2d at 763. We concluded that the facts of *Southwest Offset* were closer to the facts of the *Cousteau* case than the *U-Anchor* case, stressing two considerations: first, that Texas was probably the place of most of the contracts and that the defendant could expect that Texas law might govern the enforcement of the contracts; and second, that the defendant was no mere passive customer of the Texas corporation, having repeatedly placed orders with the Texas corporation and several times mailed copy to Texas, "a necessary part of Hudco's contract performance." 622 F.2d at 152. We believe the facts of *Southwest Offset* are distinguishable from those we now confront. Although the final argument may have been reached in Texas, as was the case in *Southwest Offset,* the contract is governed by Alaska law, not Texas law. And unlike the contract in *Southwest Offset,* the agreement here called for no significant performance by the defendant in Texas. Nor does this case involve a repeated series of transactions; instead it involves but one.

---

**7.** The *Cousteau* court further emphasized "the strength of the connection between the contract at issue and the *law* of Texas" in discuss-ing that state's interest in providing a forum for the suit under the second prong of the due process test. *Id.* at 498 n. 27 (emphasis added).

See, e.g., Standard Fittings Co. v. Sapag, S.A., 5 Cir.1980, 625 F.2d 630, 642 n. 23, cert. denied, 1981, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (distinguishing Benjamin v. Western Boat Building Corp., 5 Cir. 1973, 472 F.2d 723, cert. denied, 1973, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64, and Charia v. Cigarette Racing Team, Inc., 5 Cir.1978, 583 F.2d 184, on this basis).

Any support Hydrokinetics might find in Mississippi Interstate Express, Inc. v. Transpo, Inc., 5 Cir.1982, 681 F.2d 1003, is similarly misplaced. There Mississippi Interstate, a trucking firm, agreed to supply trucks to move goods for Transpo, a California freight broker, on an open account basis. The question this Court faced is identical with the one we now confront: "whether the district court erred in granting the California defendants' motion to dismiss on the basis that retaining jurisdiction in Mississippi would offend these defendants' rights to due process". 681 F.2d at 1003. We concluded that to subject the defendants to jurisdiction within Mississippi would not offend traditional notions of fair play and substantial justice, reasoning that Transpo's extensive commercial activities throughout the United States created an expectation that "such activity could lead to litigation in a distant forum either with plaintiff (as a result of the transactions here involved) or with any of the many parties with whom the defendant routinely dealt in the usual course of business." The Court went on to note that

> it is both reasonable and just to require lesser forum contacts of a non-resident defendant in the context of the present facts than have been found necessary to sustain jurisdiction over defendants whose activities have, both generally and with respect to the transaction giving rise to the controversy, a more purely local character. To hold otherwise would tend to immunize from suit by anyone with whom they do business, in any but their home jurisdiction, those engaged in nationwide commercial activity who conduct extensive commercial activity in other jurisdictions primarily by telephone or through the mails.

681 F.2d at 1003. Unlike the defendant in Transpo, the defendant here did not initiate repeated contacts with the forum state, nor was it engaged in an enterprise similar to brokering interstate trucking services. Its business was purely local in character.

The facts of this case are more closely analogous to those in Owen of Georgia, Inc. v. Blitman, 5 Cir.1972, 462 F.2d 603. In Blitman, the non-resident defendants were the builders of a housing project in Boston. After determining their construction requirements, they communicated with a Massachusetts steel fabricator's representative which in turn conveyed the information by telephone to the plaintiff, a steel fabricator. A representative of the plaintiff then traveled to Massachusetts, met with representatives of defendants, and allegedly entered into a contract for the necessary steel fabrication. The work was performed in the plaintiff's Georgia factory, and the steel was shipped f.o.b. to the Massachusetts project. 462 F.2d at 604. Without reaching the question whether an agency relationship between the defendants and the steel fabricator's representative would be sufficient to establish the minimum contacts with the state of Georgia necessary to comport with bare constitutional due process standards, we held that in the absence of proof such contacts were not established. Id. As in our case, the defendants knew that they were contracting for fabrication that would be performed in the distant forum. The place of payment was not considered, nor was the presence or absence of any interstate communications. Although in Blitman the contract was apparently entered into outside the forum state, whereas the contract here was apparently formed in Texas, we conclude, as already indicated, that the significance of this is diminished by the choice-of-law provision in the Alaska Mechanical-Hydrokinetics contract, and by the facts that the contract called for no significant performance by the defendant in the forum state and delivery to be made by the plaintiff outside the forum. We believe that the additional fact that representatives of Alaska Mechanical twice traveled to Tex-

as does not sufficiently distinguish the quality and nature of the contract and the defendant's contacts with Texas from the quality and nature of the contract and contacts in *Blitman* to support a holding that the district court had jurisdiction over the person of Alaska Mechanical.

AFFIRMED.

TATE, Circuit Judge, dissenting:

I respectfully dissent. While the majority makes out a persuasive case, I regretfully must differ with its conclusion that federal due process is offended by the exercise of personal jurisdiction in Texas, where the allegedly defective equipment was manufactured at the non-resident defendant's order and in accordance with specifications furnished by it.

As we recently summarized in *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1007 (5th Cir.1982):

> When a nonresident defendant takes "purposeful and affirmative action," the effect of which is "to cause business activity, foreseeable by [the defendant], in the forum state," such action by the defendant is considered a "minimum contact" for jurisdictional purposes. *Marathon Metallic Building Co. v. Mountain Empire Construction Co.,* 653 F.2d 921, 923 (5th Cir.1981.) "When a defendant purposefully avails himself of the benefits and protection of the forum's laws— by engaging in activity ... outside the state that has reasonably foreseeable consequences in the state—maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Prejean v. Sonatrach, Inc.* 652 F.2d 1260, 1268 (5th Cir.1981).

In the present instance, the contract was in the form of a purchase order, by which the Alaska defendant agreed to purchase from the Texas plaintiff the equipment, to be specially manufactured by the Texas plaintiff in Texas in accordance with the contract specifications furnished by the Alaska defendant. Thus a substantial part of the performance of the contract was contemplated to be (and was) in Texas.

Payment for the goods was to be made in Texas. Prior to the conclusion of the written contract, extensive communications occurred between the parties, originating both in Texas and Alaska. The defendant's officers traveled to Texas to close the deal, and the Texas plaintiff accepted the contract terms and executed the writing in Texas.

When the goods were shipped to Alaska after their manufacture in Texas, the Alaska defendant rejected them as unsuitable. From the factual showings, the dispute seems to concern whether the equipment failed to function improperly although manufactured in accordance with the defendant-buyer's specifications (i.e., defective specifications by the defendant) or whether instead the equipment was defectively manufactured. In either event, the Texas locus will furnish a substantial focus of the evidentiary frame of this litigation, with Texas fact witnesses predominating as the source of whether or not the Texas plaintiff properly manufactured the equipment in accordance with the specifications furnished by the Alaska defendant.

In my view, these Texas contacts are sufficient that it is fair and reasonable to require the Alaska defendant to come into Texas and defend the suit. Further, the Alaska defendant is considered to have purposely availed itself of the privilege of conducting activities within Texas since it was reasonably foreseeable that the Texas plaintiff would in fact perform a material part of its contractual obligations within that forum state. *Mississippi Interstate Express, Inc., supra,* 681 F.2d at 1007–08; *Marathon Metallic Building Company v. Mountain Empire Construction Company,* 653 F.2d 921 (5th Cir.1981); *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d 149 (5th Cir.1980).

In the event of litigation arising out of the contract, it was reasonably foreseeable that the Alaska defendant might avail itself of the Texas courts either to enforce the contract or to secure a determination that it had been breached and that the witnesses as to the performance or non-performance

of the manufacturing contract would in substantial part be available principally in the Texas forum. In my view, it is not unfair or unreasonable to require that defendant to respond in Texas, the most convenient forum for trial of these issues, when it refused to pay for the equipment, as unsuitable, that it caused to be manufactured in Texas according to its specifications, as a result of a contract in part negotiated in Texas and there accepted by the Texas plaintiff.

Accordingly, I respectfully dissent.