**FARMER BOYS' CATFISH KITCHENS INTERNATIONAL, INC. d/b/a Fisherman's Reef, Plaintiff,**

v.

**GOLDEN WEST WHOLESALE MEATS, INC. d/b/a Beck's Premium Meats & Seafood, Defendant.**

No. 1:98–CV–0056.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 7, 1998.

Kerwin Brent Stone, Moore & Landry, Beaumont, TX, for Plaintiff.

Barbara Jane Barron, Germer & Gertz, Beaumont, TX, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

On this day came for consideration Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed by Golden West Wholesale Meats, d/b/a Beck's Premium Meats ("Beck's"). Because Plaintiff has failed to offer adequate evidence to establish that Defendant had sufficient minimum contacts with Texas so that it should have reasonably expected to be haled into court here, this court finds that there is no personal jurisdiction over the Defendant and, therefore, the Motion to Dismiss is GRANTED.

### I. FACTS

Plaintiff, Farmer Boys' Catfish, is a wholesale seafood dealer with its only office in Jefferson County, Texas. In its normal course of business, Farmer Boys' procured seafood orders from retail seafood stores and restaurants from around the country and then obtained from a seafood supplier, like Defendant Beck's Premium Meats, the appropriate amount of seafood to fill the orders. Much of the business was handled or supervised by Chief Executive Officer, Michael J. Franks.

Defendant, Beck's Meats, is a California-based supplier of seafood to wholesalers. Beck's took orders from wholesalers through its California and Phoenix offices and then found seafood harvesting companies to fill the orders. The Phoenix office was run by one person, Ron Ratkelis, who answered the phone in Beck's name, took orders, negotiated prices, and helped service Beck's clients.

How the business relationship between Plaintiff and Defendant was started is rather unclear. Each side claims that the other initiated the relationship with a phone call soliciting business. It is clear, however, that when Farmer Boys' wanted to order seafood from Beck's, generally someone from Plaintiff's Southeast Texas office placed a call to Beck's Phoenix office. Besides the series of installment contracts involved in the present suit, the two parties had transacted business since 1996 in the approximate amount of $125,000.

In the transaction that led to this controversy, Farmer Boys' secured an order from a

seafood retailer in Philadelphia for a substantial amount of crabmeat. Some of the crabmeat ordered was to be pasteurized for long-term storage and use in the winter months. Farmer Boys' then called Beck's to order $250,000 worth of crabmeat—enough crab to fill the Philadelphia order. Beck's represented to Farmer Boys' that the pasteurized crabmeat had a shelf life of nine months. The product was procured by Beck's from a Mexican supplier, sent to a cold storage in Phoenix, and then shipped directly to Philadelphia. The crabmeat never came into the possession of Farmer Boys' nor did it enter the state of Texas.

When the crabmeat arrived in Philadelphia at Samuels & Sons, it was discovered that the pasteurized meat was turning blue and spoiling. Samuels & Sons, Farmer Boys' client, notified Farmer Boys' of the spoilage and rejected the delivery. When Farmer Boys' notified Beck's, Beck's refused to take responsibility for the spoilage of the crabmeat and rejected the delivery. The crabmeat was shipped to Farmer Boys' warehouse in Texas, where it still sits. Farmer Boys' refused to pay Beck's for the shipment.

Beck's ventured to sue Farmer Boys' in federal court in California for failing to pay for the crabmeat. The Honorable Christina Snyder, United States District Judge for the Central District of California, ruled that Beck's failed to meet its burden of establishing that Farmer Boys' had sufficient contacts with the state of California for the court to exercise personal jurisdiction over it. Judge Snyder dismissed the cause of action.

Now Farmer Boys' has filed suit in this court alleging that Beck's breached the contract by failing to provide crabmeat that had a shelf life of nine months, breached its express warranty, negligently misrepresented the shelf life of the meat, and fraudulently induced Farmer Boys' to enter into the contract. Beck's, in turn, filed a motion to dismiss for lack of personal jurisdiction. Beck's claimed that Farmer Boys' failed to meet its burden of establishing that Beck's has purposefully availed itself of the privilege of conducting activities within this state. To support its assertion that it did not have the requisite minimum contacts with the state of Texas, Beck's offered the declaration of Bruce Beck, the owner of the company. The declaration stated that Beck's has never advertised in Texas nor solicited business in Texas by direct mail or telephone, does not have an "800" number for Texas residents, and does not maintain an internet site for customers. The declaration further stated that, out of a total of $2.7 million of business transacted by Beck's in 1997, only approximately $50,000 of it was transacted in Texas.

To rebut Beck's allegations of insufficient minimum contacts, Farmer Boys' filed the affidavit of its chief executive officer, Michael Franks. The affidavit stated that Franks purchased $150,000 worth of crabmeat from Defendant when he was employed by a seafood company in Houston before becoming CEO of Farmer Boys'. The affidavit further stated that Beck's sales in Texas totaled $572,007 in 1996 and 1997 combined. Finally, the affidavit stated that Franks heard from Ratkelis, the person in charge of Beck's Phoenix operation, that Beck's was selling seafood products to two other Texas wholesalers in quantities comparable to those sold to Farmer Boys'.

This court held a hearing on the motion to dismiss on June 26, 1998. During the hearing the Plaintiff put on the testimony of Franks, who basically reiterated the information in his affidavit. Plaintiff also admitted an exhibit containing sales receipts, bills of lading, and purchase orders which detailed the full extent of Beck's and Farmer Boys' business transactions.

## II. ANALYSIS

This court has diversity jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332. When a nonresident defendant, in a diversity action, presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). If the court holds an evidentiary hearing on the motion to dismiss, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir.1986).

Beck's contends that it has not purposefully availed itself to the protection and benefits of this state. Farmer Boys', in turn, argues that Beck's has contracted for and transacted enough business in the state of Texas to give this court personal jurisdiction and further argues that the mere commission of a single tort by Beck's in this state is enough to vest the court with specific personal jurisdiction.

## A. Minimum Contacts and Due Process Analysis

■ In a diversity action, personal jurisdiction may be exercised over a nonresident defendant if: (1) the nonresident defendant is amenable to service of process under the law of the forum state; and (2) the exercise of jurisdiction under state law comports with the due process clause of the fourteenth amendment. *Stuart, supra,* at 1189. The first step is determining the reach of the forum state's long-arm statute. Because the Texas long-arm statute, TEX.REV.CIV.STAT. ANN. ART. 2031b (Vernon 1964 & Supp.1985), has been interpreted to extend to the limits of due process, a district court need only inquire whether the assertion of jurisdiction in Texas would be constitutionally permissible. *Hall v. Helicopteros Nacionales De Colombia,* 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *and see Stuart, supra,* at 1189.

■ The second step—the constitutional due process inquiry—is governed by federal law and requires the satisfaction of two elements: (a) the nonresident must have some minimum contact with the forum which results from an affirmative act on his part; (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Stuart, supra,* at 1189. The purpose of the minimum contacts analysis is to ensure defendants have fair warning that they may be haled into court because of their activities within the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This "fair warning" requirement can be fulfilled in two ways: (1) for general jurisdiction, the defendant can have established systematic and continuous contacts with the forum such that

the defendant has purposefully availed herself to the benefits and protections of the law of the forum state; or (2) for specific jurisdiction, the defendant must have "purposefully directed" his activities at residents of the forum and the litigation must result from alleged injuries that "arise out of or relate to" those activities. *See Stuart, supra,* at 1190–91.

In this case, Plaintiff contends that its alleged injuries arise out of and relate to Defendant's activities in Texas. Therefore, this court only will address the issue of jurisdiction with regard to specific jurisdiction.

## B. Specific Jurisdiction

■ When a controversy is related to or arises out of a nonresident's contacts with the forum, the minimum-contacts inquiry focuses on the relationship among the defendant, the forum, and the litigation. *Stuart, supra,* at 1190. The minimum contacts analysis for specific jurisdiction requires the district court to discern whether there has been some act by which the nonresident "purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir. 1983). "The defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being haled into court in the forum state." *Id.* A defendant can not "be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person'.... Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *See Burger King, supra,* at 475, 105 S.Ct. 2174 (italics in original) (citations omitted). A nonresident may permissibly structure his conduct so as to avoid being haled into court in a particular state. *Stuart, supra,* at 1190.

■ If the plaintiff has shown that the defendant had minimum contacts with the forum state, the court then inquires whether the exercise of jurisdiction comports with the "traditional notions of fair play and substan-

tial justice." *See Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In other words, the court should evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King, supra,* at 2185.

### 1. Fraudulent Inducement Claim Under Texas Law

■■■■ A single intentional tortious act having an effect on the forum state can be sufficient alone to meet the standards of the minimum contacts test. *See Calder, supra,* at 788–89, 104 S.Ct. 1482 (holding that single libelous story written in Florida, but having an intended tortious effect in California, is sufficient to vest California court with personal jurisdiction over Florida resident). In such a case, the gravamen of the jurisdictional claim is that the defendant intentionally reached into the forum state and committed a tort having sufficient effect on the forum state that the defendant should have "reasonably anticipate[d] being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *see also Wilson v. Belin,* 20 F.3d 644, 648–49 (5th Cir.1994).

■■■■ In this case, Plaintiff claims that it has a separate and distinct cause of action for the tort of fraudulent misrepresentation. Defendant retorts that the tort claim is a thinly veiled breach of contract cause of action or, in the alternative, that the tort claim is subsumed in the contract claim. The Supreme Court of Texas recently clarified the law of Texas on whether a fraudulent misrepresentation in the inducement of a contract gives rise to a tort claim separate from the aggrieved party's contract claims when the fraudulent misrepresentation results in an economic loss only. In *Formosa Plastics v. Presidio Engineers,* 960 S.W.2d 41 (Tex. 1998), the court held that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent

representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id.* at 47.

In this case, however, Plaintiff offered no evidence to support a fraudulent inducement claim through pre-hearing evidentiary submissions or during the hearing on the motion. Therefore, this court finds that personal jurisdiction cannot be based on the tort claim.

### 2. Contacts Related to the Contractual Relationship

■■■■ Finally, Plaintiff claims that the existence of the contract and the fact that Defendant has transacted some other business in Texas is enough to meet the minimum contacts standard. The mere existence of a contract between a nonresident defendant and a resident of the forum state, however, is not enough to meet the minimum contacts test. *See Burger King, supra,* at 2185–86, 105 S.Ct. 2174 ("If the question is whether an out-of-state individual's contract *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (italics in original)). Instead, the district court must look at the circumstances surrounding the existence of the contract, such as the prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing, to determine whether the defendant purposely established minimum contacts within the forum. *Id.*

■■■■ There is very little evidence, if any, that Defendant purposely established minimum contacts within the state of Texas. The totality of Plaintiff's proof was the testimony of Michael Franks at the motion hearing and the affidavit of Michael Franks filed as an exhibit. Much of Franks' testimony and affidavit was based on hearsay from Ron Ratkelis, who ran the Phoenix office for Beck's. While the hearsay evidence might be admissible at trial as an admission by a party opponent, the affidavit and testimony were clearly self-serving and totally uncorroborated. Plaintiff must make more of a showing of minimum contacts than merely

making conclusory statements that jurisdiction exists. *Product Promotions v. Cousteau*, 495 F.2d 483 (5th Cir.1974). Generally, relying solely on unverified hearsay evidence will not pass the muster of the due process requirements. *See id.; Kern v. Jeppesen Sanderson Inc.*, 867 F.Supp. 525 (S.D.Tex. 1994). This is particularly true when the nonresident defendant puts on equally compelling evidence to rebut the conclusory allegations.

Farmer Boys' has failed to provide the court with any hard, credible evidence of who initiated the business relationship, who placed the initial phone calls, or how much other business Beck's solicited or transacted in Texas. Plaintiff never submitted phone records to verify that Beck's solicited business from it or from other Texas clients, never offered business records from Beck's verifying that it transacted business in Texas, and never offered the testimony of other alleged clients to support the contention that Beck's was doing business in Texas. There is no evidence that the contract had any relation to Texas. The subject matter of the contract, the crabmeat, never even entered into Texas. Plaintiff could not even supply the court with some proof that Beck's solicits business through advertising, phone solicitation, or the internet. Instead, Plaintiff relies on Franks' self-serving, hearsay-based testimony and "the absence of any controverting declaration by Mr. Ratkelis." (Plaintiff's First Supplemental Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, at pp. 2–3).

Plaintiff has failed to show by a preponderance of the evidence that Defendant purposely established a substantial connection with the state of Texas.

### III. CONCLUSION

The sum total of the mere existence of a contract, conclusory allegations of business solicitation, and uncorroborated hearsay of other business relations does not equal the necessary minimum contacts for purposes of the due process analysis. Therefore, bearing in mind Plaintiff's burden of persuasion, this court finds that Plaintiff has not met the standard of proving that Defendant has es-

tablished minimum contacts within Texas by a preponderance of the evidence.

Each of these parties has sued the other in a federal court in its home district. The United States District Court, Central District of California, held that Beck's could not maintain its suit in California, and now this court has held that Farmer Boys' cannot maintain its suit in the United States District Court for the Eastern District of Texas. One of these parties will have to venture into a federal court where it does not have a "home court" advantage, and bring suit where its adversary is domiciled and does business, if litigation in the case is to begin. The choice is theirs.

IT IS ORDERED, ADJUDGED, AND DECREED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.