SORRELS STEEL COMPANY, INC., Plaintiff,

v.

GREAT SOUTHWEST CORPORATION and Fireman's Fund Insurance Company, Defendants.

Civ. A. No. E86–0048(L).

United States District Court, S.D. Mississippi, E.D.

Sept. 10, 1986.

Harvey Ray, Meridian, Miss., and David W. Mockbee, Jackson, Miss., for plaintiff.

Donald Clark, Jr., Hubbard T. Saunders, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Great Southwest Corporation (GSC) and Fireman's Fund Insurance Company (Fireman's Fund) to dismiss or, alternatively, for change of venue. Plaintiff Sorrels Steel Company, Inc. (Sorrels) filed timely response to the motion, and the court has considered the memoranda with attachments submitted by both parties.

Sorrels is a Mississippi corporation with its principal place of business in Meridian, Mississippi. Defendant GSC is a Florida corporation with its principal place of business in Florida, and is not authorized to do business in the State of Mississippi since the Mississippi State Tax Commission suspended its authorization on May 8, 1981. Defendant Fireman's Fund is a California corporation with its principal place of business in California, and is authorized to do and is doing business in the State of Mississippi.

On April 4, 1985, Sorrels and GSC entered into a contract which provided that Sorrels would fabricate designated structural steel for the construction of the Tampa Bay Performing Arts Center in Tampa, Florida. Under the contract, Sorrels would fabricate the steel at its facility in Meridian, Mississippi and ship the fabricated steel to the job site in Tampa. Sorrels was also required to prepare shop drawings detailing the steel members that were to be fabricated at its Meridian facility and, pursuant to the contract, GSC required shop testing of all fabricated steel in Sorrels' Meridian plant. Sorrels further alleges that during the performance of the contract, GSC representatives visited Sorrels' plant in Meridian on at least twelve occasions to inspect the plant and to coordinate future work under the contract, and that a testing company representative was sent to Meridian to supervise the performance of non-destructive testing on the steel fabricated by Sorrels. Since 1984, Sorrels and GSC have communicated at least three times per week.

Sorrels filed the instant action in the Chancery Court of Lauderdale County, Mississippi, seeking specific performance of its contract with GSC and actual and punitive damages occasioned by GSC's alleged persistent delays in providing contract drawings and its insistence on shop testing. Sorrels also has sued Fireman's Fund on a payment bond issued by Fireman's Fund as surety for GSC on the construction of the Tampa Bay Performing Arts Center. Sorrels alleges that Fireman's Fund is jointly

and severally liable with GSC for Sorrels' claim.

The cause was removed to this court by the defendants and their motion followed accordingly. Plaintiff seeks judgment against GSC and Fireman's Fund for actual and punitive damages and a decree of specific performance.

## GSC'S MOTION TO DISMISS

GSC alleges that it does not have sufficient minimum contacts with Mississippi for purposes of allowing this court to retain jurisdiction over it pursuant to the Mississippi Long-Arm Statute, Miss.Code Ann. § 13–3–57 (1972 & Supp.1985). The heart of GSC's argument is, however, that the exercise of personal jurisdiction over GSC in this court would offend traditional notions of fair play and substantial justice under the due process clause of the fourteenth amendment.

The Mississippi Long-Arm Statute provides in pertinent part:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state ... or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi.

Miss.Code Ann. § 13–3–57 (Supp.1985).

As this case obviously involves the making of a contract with a resident of this state to be performed in whole or in part in this state, this court's exercise of jurisdiction over GSC appears, at first glance, to be proper under the long-arm statute. It is well-settled, however, that plaintiff has the additional burden of establishing that the court's exercise of personal jurisdiction over GSC not only is sanctioned by the state long-arm statute but also comports with due process. *Colwell Realty Investments, Inc. v. TTT Inns of Arizona, Inc.*, 785 F.2d 1330, 1333 (5th Cir.1986);

*Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985); *Martin & Martin v. Jones*, 616 F.Supp. 339, 341 (S.D.Miss.1985). The determination of whether constitutional due process requirements have been met when a state exercises jurisdiction over the person of a nonresident involves application of a two-pronged test: (1) the defendant must have some minimum contacts with the state resulting from an affirmative act or acts on its part, and (2) it must not be unfair or unreasonable to require the nonresident defendant to defend the suit in the forum. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983) (quoting *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.*, 622 F.2d 149, 152 (5th Cir.1980)). *See also Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168–69 (5th Cir.1985). Factors to be taken into consideration in this analysis include the quality, nature and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts with the forum state. *Hydrokinetics*, 700 F.2d at 1028. These factors are relevant in determining whether defendant's actions constitute a "purposeful availment" of the benefits of the forum state. *Id.* *See also Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.1981). The unilateral activity of one who claims some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Hydrokinetics*, 700 F.2d at 1028 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

The relevant inquiry for purposes of this case is whether the facts support the exercise of "specific jurisdiction" or "general jurisdiction." The former occurs "when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum state." *Thompson*, 755 F.2d at 1170 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 412, 104 S.Ct. 1868, 1871, 80 L.Ed.2d

404 (1984)). "General jurisdiction" is exercised when a state asserts personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. *Id.* When the jurisdiction sought to be asserted is "specific," a court must then examine the relationship among the defendants, the forum and the litigation. *Thompson,* 755 F.2d at 1171. When a claim involves an exercise of "general jurisdiction," a defendant's contacts with the forum state must be so "systematic and continuous" as to reasonably support exercise of jurisdiction. *Id. See also Martin & Martin,* 616 F.2d at 341.

■ Where, as here, the "controversy is related to or arises out of a nonresident's contacts with the forum," the "specific" jurisdiction analysis is appropriate. *Stuart v. Spademan,* 772 F.2d 1185, 1190 (5th Cir.1985). That GSC entered into a contract with a Mississippi resident does not alone establish minimum contacts. *Id.* at 1193. Rather, the court is to consider factors such as "prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing." *Id.*

In *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026 (5th Cir.1983), the plaintiff contended that the defendant, an Alaskan corporation, was subject to the jurisdiction of the Texas court. The defendant generally lacked contact with Texas but the plaintiff argued that the defendant's actions surrounding formation of the contract constituted sufficient minimum contacts. The court held that the defendant's agreement to purchase goods in Texas and to make payment for the goods in Texas did not satisfy the due process clause; the court also determined that defendant's communication with the Texas plaintiff and its "closing" of the deal in Texas did not amount to purposeful activity invoking the benefits and protection of the forum state's laws. *Id.* at 1029. The court did find relevancy in the fact that defendant's personnel traveled to Texas in efforts to resolve the contract dispute but conclud-

ed that, "considering the totality of the facts of this case, the necessary inference of purposeful availment is not supported." *Id.* at 1029–30.

In *Hydrokinetics,* "[t]he only performance in Texas was that of the plaintiff...." *Id.* at 1029. Here, certain elements of the contract and subsequent agreements were to be performed by the defendant in Mississippi. These facts are particularly relevant in this case where the "problematic contact[s]" are defendant's failure to provide contract drawings and its requirement of shop testing, actions to be performed in Mississippi. *See Thompson,* 755 F.2d at 1172. "Even a single purposeful contact is sufficient to satisfy the due process requirement of 'minimum contacts' when the cause of action arises from the contact." *Id.*

■ Therefore, this court is of the opinion that in entering a contract requiring at least partial performance in Mississippi, GSC has "purposefully availed itself of the privileges of conducting activities in Mississippi and its connection with the forum is such that it should reasonably anticipate being hailed into court" here. *Thompson,* 755 F.2d 1129.

## FIREMAN'S FUND'S MOTION TO DISMISS

■ Fireman's Fund contends that it is not subject to the jurisdiction of this court because the cause of action arises from a policy issued by Fireman's Fund in Florida. Fireman's Fund, in compliance with Miss. Code Ann. § 83–21–1 (1972 & Supp.1985), has appointed the Commissioner of Insurance of the State of Mississippi as its agent for service of process. In *Morris & Co. v. Skandinavia Ins. Co.,* 279 U.S. 405, 49 S.Ct. 360, 73 L.Ed.2d 762 (1929), the defendant, a foreign insurance company, likewise argued that jurisdiction of a Mississippi court was improper because the cause of action arose in another state. The United States Supreme Court held that "[t]he purpose of state statutes requiring the appointment by foreign corporations of agents upon whom process may be served

is primarily to subject them to the jurisdiction of local courts in controversies growing out of transactions within the state." The court noted that in the absence of compelling language, such statutes should not be construed to impose upon the courts of the state the duty, or to give them power, to take cases arising out of transactions between a foreign corporation and nonresidents outside the state. *Morris,* 279 U.S. at 409, 49 S.Ct. at 361. This court is of the opinion that *Morris* is clearly distinguishable.

Initially it must be noted that the Supreme Court determined that the insurance company was not doing business in Mississippi. Additionally, the plaintiff in that action was a nonresident. Here, Fireman's Fund does business in Mississippi; the company maintains an office in Jackson, Mississippi, and, according to reports filed with the Mississippi Insurance Commission, earned in excess of $4,000,000.00 in premiums in Mississippi in 1985. Plaintiff Sorrels is a Mississippi corporation and not a nonresident seeking to bring suit in a foreign jurisdiction.

The Supreme Court opinion focused on the purpose of the statute, making foreign corporations amenable to service of process in causes of action relating to "controversies growing out of transactions within the state." Here, while the bond was issued by Fireman's Fund in Florida, it was for the benefit of all persons supplying labor and/or materials to the covered project. This court has earlier held that this cause of action arises out of that portion of the contract which required participation by GSC and Sorrels in Mississippi. According to the complaint, GSC has defaulted on those responsibilities which were to be performed in Mississippi, and Sorrels, which has provided labor and materials under the contract, has been damaged in Mississippi by GSC's action. Accordingly, it cannot be said that this cause of action deals with a transaction occurring wholly without the State of Mississippi.

## MOTION FOR CHANGE OF VENUE

As an alternative to dismissal, the defendants have moved for change of venue requesting that this action be transferred to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and the interest of justice.[1]

When considering a motion for change of venue, the court must determine the propriety of transfer in light of the particular circumstances of the parties and the controversy. *Pierce v. Alleluia Cushion Company, Inc.,* 397 F.Supp. 338 (N.D.Miss. 1975). A number of factors are to be considered in determining whether to transfer a cause of action under section 1404(a) and, while relevant factors vary depending upon the particular case, it has been held that,

> Important considerations are the relative ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), *quoted in Koehring v. Hyde Construction Company,* 324 F.2d 295, 296 (5th Cir.1963).

The plaintiff's choice of forum, while only one factor to be considered, is held to be "highly esteemed," *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966), and entitled to great weight, especially if the forum he chooses is in the district in which he resides. *Grey v. Continental Marketing Associates, Inc.,* 315 F.Supp. 826, 831 (D.C.Ga.1970). *See Paul v. International Metals Corp.,* 613 F.Supp. 174, 179 (S.D.Miss.1985) (plaintiff's choice of fo-

---

**1.** 28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, and the interest of justice, a district court may transfer any civil action to any other district or division in which it might have been brought."

rum entitled to little weight where he has sued in district other than district in which he resides). The plaintiff's privilege of choosing his venue, at the very least, places the burden on the defendants to demonstrate why the forum should be changed. *Time, Inc.*, 366 F.2d at 698.

■ The defendants herein have advanced several reasons why the Middle District of Florida is a more appropriate and convenient forum in which this case should be tried. They contend that all of GSC's records and documents regarding this matter are located in Florida, and that the burden on GSC, given the voluminous documents, is far more than an "inconvenience." Specifically, GSC asserts that it will be required to produce a greater number of documents than Sorrels at trial. Sorrels, however, argues that it anticipates that several of its key witnesses will be required to produce for trial twice the number of documents as GSC, including original tracing sheets and revised drawings, and that Sorrels itself will produce shop drawings submitted for approval and for fabrication. Were this a case in which the "vast majority" of documents or records were located in the transferee state, then the location of the documents would weigh heavily in favor of the transfer. *Paul v. International Precious Metals Corp.*, 613 F.Supp. 174, 179–80 (S.D.Miss.1985); *S.E.C. v. Page Airways, Inc.*, 464 F.Supp. 461, 464 (D.D.C.1978). It appears here, however, that GSC and Sorrels each possess a great number of documents which are relevant to the litigation. Thus, whether this action is tried in Mississippi or in Florida, one of the parties will be inconvenienced. A defendant which moves for a transfer under section 1404(a) is required to show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by the transfer. 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3849, at 408 (1986). GSC has failed to make the required showing with regard to the location of the records in the present case.

■ GSC has named nine witnesses whom it claims it may need to testify at trial, some of whom are GSC employees, and all of whom reside in or near Tampa, Florida. Of these nine witnesses, seven are non-party witnesses. One of GSC's prospective witnesses, Miller Kinser, is a former employee of GSC who resides in the Tampa area. GSC asserts that since Kinser is no longer a GSC employee, GSC will not be able to guarantee his appearance at trial in Mississippi and further notes that this court could not compel his attendance by subpoena. It has long been held that the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses is an important consideration in section 1404(a) transfer decisions. *See Koehring*, 324 F.2d at 296. As recognized in *Paul v. International Precious Metals Corp.*, 613 F.Supp. 174 (S.D.Miss. 1985), the convenience of party and non-party witnesses is the most significant factor in considering a section 1404(a) transfer motion. *Paul*, 613 F.Supp. at 179. The party seeking a transfer for the convenience of witnesses must clearly specify the key witnesses and make a general statement of what their testimony will cover. 15 *Wright, Miller & Cooper* § 3851, at 425. The emphasis is not on the number of prospective witnesses, but rather on the materiality and importance of their anticipated testimony. *Young v. Armstrong World Industries, Inc.*, 601 F.Supp. 399, 401 (N.D.Tex.1984). Courts have held that a party should not be required to try his case with depositions rather than live witnesses because he is unable to compel the attendance of material witnesses. This is especially true when the qualitative value of the witnesses' testimony is high. *See, e.g., B.J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091, 1104 (E.D.Pa.1977); *Alabama Great So. R. Company v. Allied Chemical Company,* 312 F.Supp. 3, 9 (E.D. Va.1970). Although GSC has claimed that Kinser is a key witness, it has not given any reasons why it considers his testimony to be important or material. Rather, GSC simply takes the position that Kinser has

knowledge of the relationship between Sorrels and GSC, an assertion which is also made in reference to other witnesses whom it does not contend are material witnesses.

■ Moreover, Sorrels has presented the names of ten prospective witnesses residing in or near Meridian, Mississippi who may be called to testify. Four of these are non-party witnesses. In *Marbury-Pattillo Construction Co., Inc. v. Bayside Warehouse Co.*, 490 F.2d 155 (5th Cir.1974), the court held that the district court did not abuse its discretion in denying a motion for change of venue where the only issue was whether nine witnesses should be required to travel from New Orleans to Birmingham, or whether seven witnesses should be required to travel the route in reverse. Section 1404(a) provides for transfer to a forum which is more convenient, not to a forum which is equally convenient or inconvenient. *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964). Hence, transfer will be refused where it would operate merely to shift inconvenience from one party to the other. *Darby Drug Co. v. Zlotnick*, 573 F.Supp. 661, 664 (E.D.N.Y.1983). Since GSC has failed to persuade this court that it anticipates calling key witnesses which cannot be made available for the trial of this action in Mississippi, the analysis applied in *Marbury-Pattillo* is applicable in the instant case. That is, the question here is whether the nine witnesses which GSC anticipates calling to testify should be required to travel from Florida to Mississippi, or whether Sorrels' ten witnesses should be required to travel from Mississippi to Florida. The effect of a transfer for the convenience of the witnesses under these circumstances would simply be to shift the incon-

venience from GSC to Sorrels and thus does not justify a change of venue.[2]

Another factor which GSC contends would render Florida a more convenient forum is the disruption of GSC's business operation that having the case tried in Mississippi would produce, since a trial in Mississippi would require many of its employees to appear in Mississippi. However, the same would be true of Sorrels if Sorrels were required to try its case in Florida.

■ The sub-contract entered into between Sorrels and GSC provides that the agreement shall be construed and enforced in accordance with and under the laws of the State of Florida. GSC argues that in addition, the contacts in this case will necessitate the application of Florida law for construction of the contract.[3] While it is a factor to be considered, the fact that a federal court may apply state law from a different forum is not to be accorded great weight in deciding a motion to transfer, especially where the applicable state law appears to be clear. *See Busch v. Sea World of Ohio*, 95 F.R.D. 336, 341 (W.D. Pa.1982); *Breindel v. Levitt and Sons, Inc.*, 294 F.Supp. 42, 44 (E.D.N.Y.1968). These defendants have made no contention that, if applicable, Florida law in this area is unclear, nor have they contended that this court would encounter any difficulty in applying Florida law. Moreover, as the court recognized in *Ocean Science and Engineering, Inc. v. International Geomarine Corp.*, 312 F.Supp. 825 (D.Dela.1970), "[F]or this court to apply foreign law is not such an unusual circumstance to require transfer." *Ocean Science*, 312 F.Supp. at 830.

---

**2.** GSC has also claimed that quite possibly, persons employed by the City of Tampa, the owner of the project, and the architect, also based in Tampa, may be called as witnesses. However, if a party has merely made a general allegation that witnesses will be necessary, but has neither identified them nor indicated what their testimony would be, then a change of venue will not be granted on the basis of the convenience of the witnesses. *J.I. Kislak Mortgage Co. v. Connecticut Bank and Trust*, 604 F.Supp. 346, 348 (S.D.Fla.1985); *see also* 15 Wright, Miller &

Cooper, *Federal Practice and Procedure* § 3851, at 428 (1986).

**3.** The defendants claim that because Florida has the most significant contacts, or is the center of gravity in this action, then Florida law would be applicable. *Bunge Corp. v. Big Lane*, 418 F.Supp. 1159 (S.D.Miss.1976). This issue is not before the court and will not be considered here.

GSC also argues that a possibility of potential third-party claims which it may wish to assert against the City of Tampa or the architect for this project militates in favor of transfer. GSC has not identified the basis for such potential claims against the City of Tampa and/or the architect. It does make reference to a pass-through agreement between GSC and Sorrels. This agreement provides that Sorrels' impact claim is to be presented to the City of Tampa and that "Sorrels will only be entitled to have and receive the amount of the claim that GSC recovers against other parties...." It has often been held that the ability to join third parties in the transferee district is an important, although not conclusive consideration in determining the propriety of a change of venue. *See United States v. Casey*, 420 F.Supp. 273, 277 (S.D.Ga.1976); *Biggers v. Borden, Inc.*, 475 F.Supp. 333, 337 (E.D.Pa.1979). However, the question of the comparative convenience of the parties remains an equally important factor, and where there are important considerations of convenience of the plaintiff, it may still be appropriate for the plaintiff's choice of forum to control. *See Prentice-Hall Corporation Systems, Inc. v. Insurance Company of North America*, 81 F.R.D. 477, 481 (S.D.N.Y.); *Biggers v. Borden, Inc.*, 475 F.Supp. 333, 337 (E.D.Pa.1979). GSC has made no showing that its asserted need to join potential third-party defendants outweighs any possible inconvenience to Sorrels nor given any reason why this factor should operate to deny the plaintiff its choice of forum. Rather, it merely makes a general statement of the possibility of such third-party claims and a vague reference to a pass-through agreement. There is nothing to indicate that GSC could not bring a separate suit against the City of Tampa and/or the architect in the State of Florida or that the asserted pass-through agreement would affect Sorrel's right to recovery, if any.

Finally, a consideration which courts have recognized in section 1404(a) transfers is the relative financial strength of the parties. Sorrels asserts that as a result of the alleged breach of contract by GSC, Sorrels has incurred additional expense and lost other business that it would have enjoyed but for GSC's actions, all of which has had a disastrous financial impact on Sorrels. Sorrels claims that it cannot bear the expense, nor the delay, of a trial in a Florida court. This factor, in the court's opinion, weighs heavily against a transfer under the circumstances of this case.

Having weighed the relevant factors under section 1404(a), it is the opinion of this court that the defendants have not demonstrated that the balance of convenience in the interest of justice favors a trial in the Middle District of Florida.

Accordingly, it is ordered that the defendants' motion to dismiss or, alternatively, for change of venue is denied.