APACHE PRODUCTS COMPANY,
Plaintiff,

v.

EMPLOYERS INSURANCE OF WAU-
SAU, A Mutual Company, and Stepan
Company, Defendants.

Civ. A. No. 4:93–CV–66(L)(N).

United States District Court,
S.D. Mississippi,
Eastern Division.

April 21, 1994.

652

Daniel J. Mulholland, Alan Walter Perry, Forman, Perry, Watkins & Krutz, Jackson, MS, for plaintiff.

Jackson H. Ables, III, Daniel, Coker, Horton, Bell, John D. Price, John W. Robinson, Wise, Carter, Child & Caraway, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Stepan Company to transfer this cause to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Defendant Employers Insurance of Wausau (Wausau) has moved separately to sever the claims against it from those asserted against its co-defendant. Plaintiff Apache Products, Inc. (Apache) has responded in opposition to both motions. The court, having now considered the motions and the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to sever and the motion to transfer should be granted.

Apache is a Florida corporation with its principal place of business in Meridian, Mississippi. Apache is in the business of manufacturing rigid foam insulation and other products, and has manufacturing facilities located in Meridian, Union and Byram, Mississippi, as well as in six other states, including one in Belvidere, Illinois. In the fall of 1992, Apache purchased from defendant Stepan a product identified as PS–2352 polyol, for use in its Belvidere plant in the manufacture of foam insulation. According to Apache, the PS–2352 purchased from Stepan was defective, but before the defect was discovered, the insulation which Apache had manufactured using Stepan's product was sold and installed on roofs in a number of states. Many of the roofs failed and were replaced by Apache at a cost of over $2,000,000.

In the present action, Apache asserts that Stepan's product was defective and alleges causes of action against Stepan for breach of express and implied warranties and for negligence as a predicate for recovering the costs it incurred in replacing the roofs alleged to have failed as a consequence of the defect in the PS–2352. Moreover, in addition to its claims against Stepan, Apache has named as a defendant Wausau, its insurer under a commercial general liability policy, charging that Wausau has coverage under its policy for the damages suffered by Apache resulting from the defective insulation yet has failed and refused to provide coverage for Apache's losses or defend Apache from claims asserted against it for roof failures.

Stepan requests that the court transfer this case to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1404(a), which authorizes the court, "for the convenience of the parties and witnesses, and in the interests of justice," to transfer an action to any district in which it could have been brought. There is

no question but that this action could have been brought in the Illinois district court. The question, therefore, is whether the requested transfer would serve the convenience of the parties and witnesses, and be in the interests of justice. A decision on these issues requires that the court balance the parties' competing interests and is guided by a number of factors which have been identified as relevant in considering requests for transfer. These factors are:

> (1) the relative ease of access to sources of proof;
>
> (2) the availability of compulsory process, where necessary, over witnesses;
>
> (3) the cost of obtaining witnesses for attendance at trial;
>
> (6) the administrative difficulties of the courts;
>
> (7) the local interest of the controversy, and the imposition of jury duty on citizens residing in a community having no relation to the litigation;
>
> (8) the propriety of having the action tried in a forum "at home" with the state law governing the case;
>
> (9) the plaintiff's choice of forum;
>
> (10) the possibility that trial in the original forum will result in inconvenience, vexation, oppression, or harassment of the defendants; and
>
> (11) all other practical problems that make the trial of a case easy, expeditious, and inexpensive.

*Fullman v. AAA Cooper Transp. Co.*, 732 F.Supp. 54, 55 (N.D.Miss.1990) (quoting *Radio Santa Fe, Inc. v. Sena*, 687 F.Supp. 284, 287 (E.D.TX 1988)). The court's task is to weigh these factors and to determine whether, on balance, the proposed transferee district will provide a more convenient forum for the litigation.

■ The court's analysis of these factors proceeds from the initial premise that the plaintiff's choice of forum is entitled to "great weight, especially if the forum [it] chooses is in the district in which [it] resides." *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 651 F.Supp. 623 (S.D.Miss.1986). As this court recognized in *Sorrels*, "[t]he plaintiff's privi-

lege of choosing his venue, at the very least, places the burden on the defendants to demonstrate why the forum should be changed." *Id.* But where the defendant does show that another forum is significantly more convenient for the parties and witnesses, and that there appear to be no substantial impediments otherwise to transfer, the plaintiff's choice of forum must give way and the court should not hesitate to order a transfer.

Here, Stepan has presented a forceful argument for transfer. Stepan is a Delaware corporation with its principal place of business in Illinois. The product which is at issue in this lawsuit, PS–2352, was developed and designed at Stepan's Northfield, Illinois laboratories, and was analyzed by Stepan personnel at its plant in Elwood, Illinois. And though Apache's principal place of business is in Mississippi, all of the polyol which Apache purchased from Stepan was shipped from Stepan's Elwood plant to Apache's facility in Belvidere, Illinois and was used by Apache exclusively at its Illinois plant. Apache's orders for the product were placed from its Illinois plant, all sales were invoiced to its Illinois plant and all payments were made by checks issued from Apache's Illinois plant and drawn on Apache's account in an Illinois bank. In addition, most of the insulation which Apache manufactured using Stepan's PS–2352 was sold in Illinois and used on roofs constructed in Illinois. All of these facts readily explain why the vast majority of proposed witnesses, both party and non-party, who may be expected to testify at a trial of this case are located in Illinois.

■ While all of the factors identified *supra* as are pertinent in a given case are to be considered, some are of greater importance, and entitled to more weight than others. The "most significant factor," though, as this court has recognized many times, is the convenience of party and non-party witnesses. *Sorrels*, 651 F.Supp. at 629 (citing *Paul v. International Precious Metals Corp.*, 613 F.Supp. 174, 179 (S.D.Miss.1985)). In this case, that factor weighs decidedly and heavily in favor of transfer.

Stepan advises that a number of its employees with knowledge relating to the cre-

ation and development, analysis and sales of PS–2352 reside in Illinois. That includes seven prospective witnesses with information as to the creation and development of the product, in addition to the laboratory manager at Stepan's Elwood plant, Dave E. Rapson, who supervised the analysis of the product shipped to Apache. Moreover, all employees of defendant Stepan having knowledge of the sales of PS–2352 to Apache live in the Chicago area. In addition to its own employees, Stepan points out that at least six of Apache's employees who have knowledge relating to the production, manufacture, inspection and testing of the foam roof insulation produced using PS–2352 are Illinois residents.[1] Apache claims in this action that fourteen roofs failed and required replacement as a consequence of the defective PS–2352. Stephen disputes that the product was defective and that any defect caused any roof failures. Ten of the roofs claimed to have failed are located in Illinois, and according to Stepan, of seventeen individuals who have been identified as having inspected one or more of these roofs and thus as having knowledge as to the condition of the roofs, twelve are Illinois residents. Of the remaining five, two are residents of Mississippi, two of Indiana, and one resides in Wisconsin.

Another question presented in this case is whether the alleged failures of these roofs were caused by a defect in Apache's product, or rather by improper storage and/or installation. Stepan contends that as to this issue, the roofing contractors who installed the roofs and their employees will be material witnesses. And whereas none of the roofing contractors is located in Mississippi, the contractors responsible for installation of at least nine of the roofs are located in Illinois.[2]

Finally, Stepan has identified as a witness former Apache employee, William Whitchurch, who was the plant manager of Apache's Belvidere plant during Apache's manufacture of insulation using the PS–2352 polyol. Because of his former key position with Apache, as well as his criticism of what he has described as Apache's "poor judgement" relating to its use of PS–2352, Whitchurch is claimed by Stepan to be a "pivotal" witness in this case.[3]

A careful review of Apache's response to the motion to transfer reveals that Apache does not dispute Stepan's representations concerning probable witnesses. Apache, though, does point out a number of facts which it contends lessens what might otherwise be the superficial significance of Stepan's position on witness convenience. In particular, Apache notes that many of the potential witnesses identified by Stepan are Stepan's own employees who can be compelled to attend trial in Mississippi, even though they reside in Illinois; that all of the witnesses identified by Stepan are subject to compulsory process from Mississippi for the purpose of discovery and preservation of evidence; and, that there are many witnesses located in states other than Illinois and Mississippi who will probably have to testify by deposition, regardless of where the case is ultimately tried. Finally, Apache points out that three of its own employees who have knowledge on key issues and who are, in fact, its "primary" witnesses in the case, Jim Burgess, Al Gaston and Joey Glorioso, are Mississippi residents who would be inconvenienced if this

---

1. These include Bob Wilson, production supervisor, and Carol Daehler and Tyler Townes, shift supervisors. Each of these witnesses was identified by William Whitchurch, Apache's former Belvidere plant manager, as having relevant information. Moreover, in interrogatory responses, Apache was asked to identify its personnel who were "primarily involved" in testing the product. Apache identified Joey Glorioso, a Mississippi resident, and three Illinois residents, Terry Taylor, Kevin Creegan and Rod Schmitz.

2. Seven of the roofs were installed by Olsson Roofing Company of Aurora, Illinois, and J & P Roofing and Associated Roofing and Waterproof-

ing, both also of Illinois, each installed one of the roofs.

3. Stepan represents that Whitchurch will testify, *inter alia*, that "Apache's management rushed the Belvidere, Illinois plant into employing a new blowing agent and ingredients without adequate testing or adequate preparation for the reformulation of Apache's product," and that "he personally invited Stepan personnel to attend the conversion of the Belvidere, Illinois plant, but he was instructed by his superiors to cancel the invitation and prevent Stepan from participating."

case were transferred to Illinois.[4] Burgess, Apache explains, is familiar with the roof complaints received by Apache, the condition of the defective insulation and the costs incurred by Apache in resolving the complaints; Gaston is also familiar with Apache's costs in replacing the roofs and the amount of damages sustained by Apache; and Glorioso, Apache's technical director, is familiar with representations made by Stepan concerning the allegedly defective polyol and further, having inspected the defective installation, is knowledgeable about its condition.

◼ Stepan has identified a substantial number of witnesses who reside in Illinois and whose convenience would thus be best served by trial in Illinois. The court recognizes, though, that its analysis should consist of more than merely comparing numbers of witnesses and determining which party is able to identify the greatest number of witnesses who would be inconvenienced by a trial in one forum or the other. The court should take into account both the quantitative *and* qualitative aspects of witness convenience. The number of witnesses is only one ingredient in the total mix of relevant considerations. That is not to say, however, that the numbers should not be considered. They should be, and such consideration is particularly appropriate in a case such as this, where it is shown not only that more, but that substantially more witnesses reside in the proposed transferee forum than in plaintiff's chosen forum. But additional considerations persuade the court that from the standpoint of witness convenience, Illinois would be more convenient than this forum.

◼ It is true, as Apache notes, that a number of witnesses identified by Stepan are Stepan's employees who can be compelled to testify at trial in Mississippi. By the same token, though, while the only three witnesses which Apache has identified reside in Mississippi, each of those individuals is an Apache

employee who can be compelled to testify at trial in Illinois.[5] Apache has not identified a single non-party witness who could not be compelled to attend trial in Illinois. In contrast, *many* of Stepan's proposed witnesses are not its employees and cannot be compelled to testify in Mississippi. This includes not only persons who inspected the roofs which allegedly required replacement and those who installed the roofs, but also Apache's former employee, Whitchurch. He is an Illinois resident who is not a party, or under the control of any party, and whose testimony is claimed by Stepan to be of critical importance to its case. In *Sorrels,* this court recognized that a party should not be relegated to trying his case "with depositions rather than live witnesses because he is unable to compel the attendance of material witnesses." *Sorrels,* 651 F.Supp. at 629. "This is especially true when the qualitative value of the witnesses' statement is high." *Id.* Similarly, in *Fullman,* 732 F.Supp. at 55, the court was persuaded to transfer because, *inter alia,* "one of the witnesses whose testimony may be of the utmost importance to defendant [was] outside the subpoena power of [the] court, but could be compelled to attend trial in [the other forum]." In light of the foregoing, the conclusion is inescapable that considerations of witness convenience strongly favor transfer to the Northern District of Illinois.

◼ Another consideration which can influence decisions on transfer is the law that will be applied to the issues in the case. That is, a factor for the court to consider is "the propriety of having the action tried in a forum 'at home' with the state law governing the case." *Fullman,* 732 F.Supp. at 55. The parties here dispute what state's substantive law will govern the issues presented. Stepan maintains that Illinois law will apply, whereas Apache submits that Mississippi law applies. There are three causes of action asserted in this case: breach of express war-

4. Apache also asserts in its memoranda in opposition to transfer that the absence of two senior officers of Apache from corporate headquarters "would certainly cripple Apache's general ability to conduct business." No evidentiary support has been provided for this assertion.

5. Apache even states in its brief that "[t]he location of a witness is less significant when that witness is an employee of a party, because both the employer-party and the court can compel his attendance at trial." (quoting 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3851, at 420–23 (2d ed. 1986)).

ranties, breach of implied warranties and negligence. As to the negligence claim, there is little question but that Illinois law will apply. Under Mississippi's choice-of-law rules, tort claims are governed by the substantive law of the state that is the "center of gravity," *Boardman v. United States Auto Ass'n*, 470 So.2d 1024 (Miss.1985), which is apparently Illinois. It seems clear that Illinois law will also apply to the breach of express warranty claim. The parties have identified Illinois law as applicable under a choice-of-law provision in their contract, and under Mississippi law, such provisions are enforceable so long as the transaction bears a "reasonable relation" to the state whose law is chosen. Miss.Code Ann. § 75–1–105(2). There is no doubt that Illinois bears a reasonable relation to the transaction at issue. A serious question is presented, however, as to which state's laws will govern the resolution of the breach of implied warranties claim. Again, while Mississippi law will recognize the parties' choice of law, there is an important and "unique" exception. Section 75–1–105(2) provides:

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement, this code applies to transactions bearing an appropriate relation to this state. Provided, however, the law of the State of Mississippi shall always govern the rights and duties of the parties in regard to disclaimers of implied warranties of merchantability and fitness, limitations of remedies for breaches of implied warranties of merchantability or fitness ... notwithstanding any agreement of the parties that the laws of some other state or nation shall govern the rights and duties of the parties.[6]

In *Price v. International Telephone and Telegraph Corp.*, 651 F.Supp. 706, 710 (S.D.Miss.1986), this court explained that this section "authorizes the application of Mississippi substantive law on ... disclaimers and

limitation of remedies in a warranty action only when the transaction giving rise to the warranty claim bears some reasonable and appropriate relation to Mississippi." Whether there is such a "reasonable and appropriate relation" in the case at bar is contested by the parties. In its brief, Apache notes that its principal place of business is in Mississippi, and describes Mississippi's relation to the transaction as follows:

> Stepan marketed 2352 polyol to Apache in Mississippi. Stepan visited Apache to conduct joint tests of 2352 polyol with Apache in Mississippi and during that visit and thereafter made representations and gave assurances to Apache personnel located in Mississippi. It was on the basis of this tests [sic] conducted with Stepan in Apache's Byram plant, and the representations and assurances given in connection therewith, that Apache determined to use 2352 in its Belvidere, Illinois plant.

Were there evidentiary support for these assertions, the court would not hesitate to conclude that Mississippi law applies to the breach of implied warranty claim. This court has recognized that the "reasonable relation" test under the Uniform Commercial Code for contractual choices of law by parties is not an especially strict standard, *Superfos Investments, Ltd. v. FirstMiss Fertilizer, Inc.*, 809 F.Supp. 450, 452 (S.D.Miss.1992), and implicitly, the same lenient standard would apply to the transactional relation test for applicability of Mississippi law to implied warranty disclaimers and limitations of remedies. This court is reluctant, however, to attempt a definitive determination of this issue on the record as it currently stands.

Nevertheless, even if Mississippi law were held to apply to the implied warranty claim, that circumstance would not necessarily counsel against transfer for a number of reasons. First, as the court has already indicated, there are claims in this action to which Illinois law does apply. And while Mississippi law regarding disclaimers and limitations of remedies is out of the ordinary,

---

6. This provision is significant because Mississippi law prohibits any "limitation of remedies or disclaimer of liability as to any implied warranty of merchantability or fitness for a particular purpose." Miss.Code Ann. § 11–7–18.

the law is not unclear or uncertain and could be applied without difficulty by an Illinois court. This court has applied the laws of other states on many occasions and it is not unlikely in the least that the Illinois court has done so as well. *See Sorrels,* 651 F.Supp. at 630 ("While it is a factor to be considered, the fact that a federal court may apply state law from a different forum is not to be accorded great weight in deciding a motion to transfer, especially where the applicable state law appears to be clear").

While Apache has made a half-hearted argument against transfer based on witness considerations, and has contested transfer on the basis of the law that it asserts will apply, Apache's main arguments are that the motion to transfer should be denied because the motion was not timely filed, i.e., because Stepan unnecessarily delayed requesting transfer, and that it should be denied, as well, because the parties' investment of time and money in the litigation in this forum is too great and will have been essentially wasted if transfer is granted at this late date.

 This case was filed June 30, 1993 and the motion to transfer was filed January 31, 1994, seven months later. While § 1404(a) imposes no time limits on the filing of a motion to transfer, a party's delay in seeking transfer may appropriately be considered in evaluating the motion since a delay in requesting transfer may impact other pertinent considerations, such as whether a transfer after substantial progression of the case in one forum would delay the ultimate resolution of the action or greatly diminish the value of judicial resources that have been expended in the matter. *See Frazier v. Commercial Credit Equip. Corp.,* 755 F.Supp. 163 (S.D.Miss.1991). While it has been said that a request for transfer should be made early on, before discovery on the merits, *see McDonnell Douglas Corp. v. Polin,* 429 F.2d 30 (3d Cir.1970), courts have also recognized that there are circumstances in which "an investigation of some consequence needs to be accomplished in order to assemble all of the pertinent factors to be presented and considered in connection with a motion for change of venue," *Northwest Animal Hosp., Inc. v. Earnhardt,* 452 F.Supp. 191, 195 (W.D.Okla.1977). In this case, while Stepan did not file its motion to transfer until seven months after the complaint was filed, it did raise the need for transfer in its answer to the complaint, filed August 25, 1993.[7] Immediately after answering, Stepan served on Apache interrogatories and requests for production of documents which it contends were designed and intended to elicit, *inter alia,* facts to support a motion to transfer. According to Stepan, the documents requested of Apache in August and on which it ultimately relied to determine the location of buildings and the identity and location of roofing contractors and roof inspectors, were not produced by Apache until December 1993. Additional information concerning potential witnesses was learned during the January 19, 1994 deposition of William Whitchurch; Stepan had written Apache's counsel in November 1993 seeking a date to depose Whitchurch and did so at the earliest available date. Given all of these circumstances, the court cannot conclude that the delay in requesting transfer, standing alone, presents a sufficient basis upon which to deny transfer. The next question, though, is whether, irrespective of the cause for any delay, a transfer at this stage of the proceedings would be unduly burdensome on the parties, or would result in a waste of resources already expended by the parties and/or the court. This brings the court to Apache's chief argument in opposition to transfer.

Apache insists that Illinois, at least at this late date in the proceedings, is not a more convenient forum for this litigation since a transfer at this juncture would increase the cost of litigation and delay its resolution. It points out that the parties have conducted "substantial merits discovery" in this forum and that Stepan has filed a partial summary judgment motion which the parties have fully briefed and which is currently pending before this court. Further, and apparently

---

7. As its fourth defense, Stepan stated: This action should be dismissed, or in the alternative, transferred to the United States District Court for the Northern District of Illinois under the doctrine of forum non conveniens and pursuant to 28 U.S.C. § 1404.

more significantly from Apache's point of view, Apache's Mississippi attorneys have been involved in this controversy for approximately a year, including the time prior to filing suit, when they were involved in an investigation and settlement of the roof claims. Its Mississippi attorneys have interviewed witnesses, handled all of the document production, participated in the discovery deposition of Whitchurch, hired and interviewed experts, and in general, done all that is required in the representation of Apache. It emphasizes that it has "a *substantial* investment of money in its Mississippi counsel," which would be "completely wasted or substantially devalued" if this case were transferred to Illinois. Apache acknowledges that it would be "forced to continue with present counsel" if this case were transferred to Illinois because of the "magnitude of [its] investment in the Mississippi counsel," but argues that since its Mississippi attorneys are neither licensed nor experienced to practice in Illinois, it would be required to retain additional Illinois counsel familiar with the contours of litigation in Illinois district court. And Illinois counsel would have to go over all that Mississippi counsel has already done. This would require not only that Apache pay attorney's fees for duplicated effort, but would also mean that there would necessarily be a delay in the progress of the case for the time needed to secure Illinois counsel and to bring them up to speed. Additionally, Apache would thereafter be billed by two separate law firm for services that could be performed by one if the case remained in Mississippi. It would further be faced with paying the expenses of its Mississippi attorneys' travel to and from Illinois, an expense that would be avoided if the case were not transferred. These added expenses, Apache insists, would not be "convenient" in the least.

It has been held time and again that the "convenience of counsel is the least important

consideration" in evaluating a motion to transfer. *Libby v. Russell,* 349 F.Supp. 573, 574 (N.D.Miss.1972). "[T]he ease with which foreign counsel may be admitted to practice in other districts indicates that this factor should be given little consideration." *Paul v. International Precious Metals Corp.,* 613 F.Supp. 174, 180 (S.D.Miss.1985); *see also Scheinbart v. Certain–Teed Prods. Corp.,* 367 F.Supp. 707, 710 (S.D.N.Y.1973) ("the inconvenience caused plaintiff due to the need to retain local counsel in the transferee district is of little, if any, weight on a motion to transfer"). Thus, the fact that Apache would have to retain additional counsel if this case were transferred has little bearing on the court's decision. If it were the case that the litigation would be significantly delayed by a transfer, or if the court found that judicial resources would be wasted if the case were transferred, those matters would certainly weigh against transfer. But the court is unable to conclude that either circumstance exists. It is certainly possible that there could be a delay caused by the need to retain additional counsel. But any such delay would be minimal, at best. And the court has not been called upon to expend significant effort managing the case to date. As Apache observes, there is pending in this court a motion by Stepan for partial summary judgment. However, the motion to transfer was filed before the court undertook consideration of that motion, and having received the motion to transfer, the court determined that judicial resources would be more efficiently employed by considering the transfer request before delving into the motion for partial summary judgment. In the event of transfer, there would be nothing to prevent the parties from noticing the motion for consideration by the Illinois court.

Regarding the progress of discovery, the most that can be said at this time is that while some discovery has been conducted by the parties, there is surely more to be done.[8]

---

8. The extent of discovery already conducted, and what more is required is not clear. In its brief in opposition to the motion to transfer, Apache stated that there had been "substantial merits discovery." However, as of December 30, 1993, just over a month earlier, Apache represented in its Designation of Expert Witnesses that "[a]t the present time, discovery is in process and is, as a practical matter, in its earliest stages." As of the date Stepan filed its rebuttal memorandum on the motion to transfer, February 18, 1993, only one deposition had been taken. The court was advised by the parties at a conference held April 18 that four more depositions have been taken.

The court perceives no obstacle to the parties' utilizing the discovery that has already been conducted, even if the case is transferred. It should be observed, too, that given that this controversy is based, for all practical purposes, in Illinois, and in states other than Mississippi (where witnesses reside), the logistics of future discovery, from Apache's and its attorneys' standpoint, should not be seriously affected by a transfer to Illinois.[9]

With all of this having been said, the court comes to a final matter which bears on the transfer issue. The court is to consider "all other practical problems that make the trial of a case easy, expeditious, and inexpensive." One such "practical problem" in the case *sub judice* is the fact that this case involves more than just Apache's claims against Stepan. Apache has also asserted claims against another defendant, its insurer, Wausau, alleging that Wausau breached its duty to defend and to indemnify Apache for claims made by purchasers of Apache's products, and committed "bad faith" by failing to defend and pay without a legitimate or arguable reason. In its motion to transfer, Stepan urges the court to sever the product liability claims against it from the insurance contract claims against Wausau pursuant to Rule 21 of the Federal Rules of Civil Procedure. Wausau has filed its own motion to sever, concurring in Stepan's assessment of the claims as misjoined, and agreeing with Stepan's conclusion as to the propriety of transfer. Wausau, though, suggests that the court allow the claims to remain joined until the parties have completed discovery, and then sever and transfer the claims against Stepan to the Illinois court. Apache opposes the requests of both defendants. It insists that the claims against both defendants are properly joined and further, that the court lacks authority under Rule 21 to sever the claims for the purpose of facilitating transfer.

Rule 21 provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

The requests for severance present two separate, but related issues. First, are these claims, in fact, misjoined? And second, could the court sever to facilitate transfer even if they are not misjoined?

Rule 20 governs joinder of parties and provides, in pertinent part:

All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, *any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.* (emphasis supplied).

Apache asserts, and neither Stepan nor Wausau disputes that the claims alleged against both defendants involve some common questions of fact. For example, there are the questions whether the roof insulation was defective or whether the roof failures were caused by negligence of the roofing contractors and whether the roofs needed to be replaced, and questions are also presented with respect to the reasonableness of the costs Apache incurred in replacing the roofs. Stepan insists, though, as does Wausau, that the claims do not meet the transactional requirement for joinder, i.e., that the claims do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." While there is no strict rule for determining what constitutes the same transaction or series of transactions for purposes of Rule 20(a), *Mosley v. GMC,* 497 F.2d 1330, 1333 (8th Cir.1974), under the Federal Rules of Civil Procedure, "joinder of claims, parties and remedies is strongly encouraged," *Unit-*

---

Further, counsel for Apache estimated that approximately 40 percent of the depositions have been taken, whereas Wausau's attorney estimated that more than 80 percent of the depositions remain to be taken.

9. That is to say, Apache representatives and Mississippi counsel would be required to travel to Illinois and to other states where witnesses are located regardless of where the trial is ultimately held.

*ed Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Thus, Rule 20, in particular, is liberally interpreted in favor of joinder. In fact, "[c]ourts have allowed joinder of defendants where '[t]he operative facts are related even if the same transaction is not involved,' . . . , where there are 'enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly.'" *Mosley,* 497 F.2d at 1333. In this case, defendants make a reasonable argument that they, and the claims against them, are misjoined. The transactions which form the basis of the claims are unrelated in any significant way. The claims against Stepan are solely based on alleged defects in Stepan's product, whereas Wausau is defending claims pertaining to its alleged refusal to defend and pay under a liability insurance policy. The nature of the claims is entirely different, and many of the facts required to prove one claim will not be relevant to the other. The parties all agree, though, that there are some common factual issues. This "concurrence" of factual issues common to the claims leads the court to conclude, especially in light of the liberal joinder policy of the rules, that the claims are not misjoined. The question, then, is whether this court has the authority to, and if so, whether it would be in the interest of justice, to sever the claims, even though not misjoined, for the purpose of facilitating transfer of the claims against Stepan to another forum.

■ With regard to the question of authority, the court has little difficulty concluding that severance for the purpose of facilitating transfer is allowable under the rules. Apache questions the permissibility of this procedure, citing the following comments by Professor Moore:

> Does Rule 21 permit severance for the purpose of transfer of part of a case to another district under 28 U.S.C. § 1404(a) for the convenience of witnesses and parties and in the interest of justice? While the case is not as compelling as that in which the transfer is made under § 1406(a) for want of proper venue, the power to sever in such a case has been recognized. In view of the fact that the balance of convenience must be strongly in favor of

the defendant to upset the plaintiff's choice of venue, and the general preference in the federal courts for unitary adjudication, severance for purposes of transfer under § 1404(a) is rarely appropriate.

3A J. Moore, *Moore's Federal Practice* ¶ 21.-05(2), at 21–43 (2d ed. 1993). In fact, however, severance for this purpose is far more common that the treatise suggests. *See, e.g., Toro Co. v. Alsop,* 565 F.2d 998 (8th Cir. 1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802 (1978) (district court had power to sever and transfer); *Wyndham Assocs. v. Bintliff,* 398 F.2d 614 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Cain v. New York State Bd. of Elections,* 630 F.Supp. 221 (E.D.N.Y. 1986) (severance not limited to cases of improper joinder; claim may be severed based on lack of significant relationship between defendants or solely for purpose of facilitating transfer); *General Tire & Rubber Co. v. Jefferson Chemical Co.,* 50 F.R.D. 112 (S.D.N.Y.1970); *Mobil Oil Corp. v. W.R. Grace & Co.,* 334 F.Supp. 117, 121 (S.D.Tex. 1971) ("There have been numerous federal decisions . . . which have authorized a federal district court to sever the claims of several defendants to create a new cause of action susceptible to § 1404(a) transfer."); *see also* C. Wright, A. Miller and M.K. Kane, 7 *Federal Practice and Procedure* § 1689, at 478 (1986) ("Even when venue is proper as to all defendants, the court may sever a claim against a party and transfer it to a more convenient forum or sever an unrelated claim and give it separate treatment when doing so would be in the interest of some or all of the parties").

■ The fact, however, that the court has the authority to sever the claims against Stepan and Wausau, so that it can transfer the claims against Stepan, does not necessarily mean that the court should exercise that authority, even though transfer would be manifestly more convenient for the trial of the claims against Stepan, for it is only when the administration of justice would be served that this procedure should be employed. *See Wyndham Assocs.,* 398 F.2d at 618 (severance for purpose of transfer permitted when administration of justice would be materially

advanced); *SEC v. National Student Marketing Corp.,* 360 F.Supp. 284 (D.D.C.1973) (same); *cf. Hess v. Gray,* 85 F.R.D. 15 (N.D.Del.1979) (key element for court to consider is degree of defendant's involvement in transaction, for severance allowed only when severed but transferred defendant was only secondarily or peripherally involved in the litigation). Apache insists that severance for the purpose of transferring the Stepan claims to another forum would result in an undue imposition on its ability to prosecute its claims against both defendants which would be neither fair nor in the interest of justice. It argues that it would be required to conduct two full trials, one in Mississippi and one in Illinois, and would further be required to duplicate its discovery efforts. This would mean that it would have to produce documents twice, that some witnesses would have to be deposed twice, that it would be required to maintain two separate document depositories, and that two courts would be required to resolve discovery disputes. Further, Apache protests that the procedure proposed by defendants would unnecessarily subject it to the possibility of inconsistent findings of the facts which are common to the claims against the two defendants. Apache contends, therefore, that the court should retain the entire lawsuit in this forum, for purposes of discovery and trial. If severance of some or more issues is required for trial, Apache argues, then the court can appropriately accomplish a severance under Rule 42 which permits any claims to be tried separately.

The court is convinced that the claims against Stepan should be tried in Illinois, if that can be feasibly accomplished without unduly burdening Apache. The court is not especially influenced by Apache's protest that it will be required to conduct two trials if severance is ordered and the Stepan claims are transferred since the court considers it quite likely that even were the case to remain in this forum, separate trials would be ordered under Rule 42. The court is, however, sensitive to Apache's objection to this procedure on the basis that it would be re-

quired to engage in duplicative discovery on different schedules and with different magistrate judges ruling on discovery disputes if the case were transferred at this time. For that reason, the court is of the opinion that this case should remain in this court pending the completion of discovery. Once discovery has concluded, the claims against Stepan and Wausau should be transferred and the Stepan lawsuit then transferred to the Illinois district court. After much consideration, and consultation with the parties, the court is persuaded that this solution will best accommodate both Stepan's interest in having the claims against it tried in Illinois and Apache's interest in avoiding duplicative discovery efforts.

The court, consistent with the foregoing, orders that upon completion of discovery, Apache's claims against Stepan will be severed from its claims against Wausau, and further that immediately upon severance, an order will be entered transferring the case against Stepan to the United States District Court for the Northern District of Illinois.[10]

ORDERED this 21st day of April, 1994.

---

**10.** By this opinion, the court has in essence determined to grant both Stepan's and Wausau's motions, but to order the relief requested by those motions effective at a future and as yet undetermined date.