George DALE, Commissioner of Insurance for the State of Mississippi, in His Official Capacity as Receiver of Franklin Protective Insurance Company, et al.  Plaintiffs

v.

FIRST AMERICAN NATIONAL BANK, Now Known as Amsouth Bank, and First Tennessee Bank Defendants

No.  CIV.A. 3:02CV1462LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 30, 2005.

Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Defendant AmSouth Bank.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the separate motions of defendants First American National Bank, now known as AmSouth Bank (AmSouth) and First Tennessee Bank to transfer venue pursuant to 28 U.S.C. § 1404(a). Plaintiffs have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motions to transfer should be granted.

This suit was brought by the Insurance Commissioners of five states, Mississippi, Tennessee, Missouri, Oklahoma and Arkansas, in their capacity as receivers for six insurance companies in those states that were defrauded of millions of dollars pursuant to a scheme devised and imple-

mented by Martin Frankel.[1] This scheme involved Frankel's purchase of the Insurance Companies through various entities, while he was simultaneously controlling the unregistered brokerage that was supposedly investing the large cash reserves that insurance companies typically have on hand. He was instead funneling the money to overseas bank accounts. The scheme dissolved in May 1999, when Mississippi Insurance Commissioner George Dale became suspicious and placed the Frankel-controlled insurance companies under state supervision.[2]

Some of the money embezzled by Frankel and his associates was laundered through accounts held by the Insurance Companies at both AmSouth, from 1991 to 1999, and from First Tennessee Bank, from 1997 to 1999, and in this action, the Receivers for the insurance companies seek to recover a portion of the looted funds based on allegations that the defendant banks were negligent in not recognizing and preventing the fraud the accounts were being used to commit.

By their present motions, the defendant banks seek to have this case transferred to the Middle District of Tennessee, Nashville Division, pursuant to § 1404(a), which authorizes the court to transfer a case to another district in which the case could have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice. . . ."

Upon review of the parties' submissions relative to the present motions, it is apparent to this court that the Middle District of Tennessee is a much more convenient and appropriate forum for litigation of this action than the Southern District of Mississippi.[3] The court does not discount the interest of at least one of the Receivers-the Mississippi Receiver-in litigating the case here. In the court's opinion, however, other factors exist which overcome the Receivers' choice of a Mississippi forum and practically dictate that the case be transferred to Tennessee.

■ The first requisite to a transfer under § 1404(a) is that the judicial district to which transfer is sought would have been a district in which the claim could

---

1. The Tennessee Receiver has since dismissed her claims in the case.

2. The facts are taken, in part, from the summary of facts set forth in *AmSouth v. Dale*, 386 F.3d 763 (6th Cir.2004), a declaratory judgment suit filed by AmSouth in the Middle District of Tennessee in anticipation of the Receivers' filing the present action in Mississippi. In that suit, AmSouth sought an adjudication that the banks were not liable to the Receivers in connection with Frankel's money-laundering scheme, and further sought an injunction barring the Receivers from bringing future lawsuits against them. Although the Tennessee district court denied the Receivers' motion to dismiss that action, the Sixth Circuit reversed and dismissed the case upon finding that "the Banks filed declaratory actions not to resolve issues of liability that were hindering their normal behavior, but instead to gain procedural advantage." *Id.* at 790.

3. Although this case has been pending in this district for three years, since September 2002, nothing of substance has occurred in the case to date. At the time this suit was filed and removed, AmSouth's declaratory judgment suit was pending in the Tennessee district court, which by order dated March 21, 2003, enjoined the Receivers from pursuing this action prompting this court to stay this case. The Sixth Circuit's decision reversing was rendered in September 2004, following which the case was returned to this court's active docket and briefing resumed on an already-pending motion to remand. This court entered its opinion denying the motion to remand on May 12, 2005, following which AmSouth filed an amended motion to transfer (a previous motion having been filed shortly after removal) and First Tennessee filed its motion to transfer. Briefing on these motions has only recently been completed.

have been filed. There is no question about that here. Venue is undeniably proper in Tennessee pursuant to 28 U.S.C. § 1391, as "a substantial part of the events or omissions giving rise to the claim" occurred in the Middle District of Tennessee.[4] Moreover, both defendants do business in Tennessee and are clearly subject to personal jurisdiction there.

■ The court thus turns to the issues of "the convenience of parties and witnesses" and "the interest of justice." The Fifth Circuit has identified a number of private and public interest factors pertinent to the determination of "convenience," none of which are given dispositive weight. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.*

*Id.*

■ An analysis of the transfer issue begins with the proposition that there is a strong presumption in favor of a plaintiff's choice of forum, which may be overcome only when these private and public interest factors clearly point towards trial in the alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). *See also In re McDonnell–Douglas Corp.*, 647 F.2d 515, 517 (5th Cir.1981) ("[U]nless the balance is strongly in favor of the defendant, ... the plaintiff's choice of forum is not to be disturbed."). Moreover, it is well established that "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum," for "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Id.* at 255–56, 102 S.Ct. at 266 (1981). However,

> [a] citizen's forum choice should not be given dispositive weight. Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

*Id.* at 256, 102 S.Ct. at 266. *See also In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir.2003) ("We believe that it is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative.").

---

4. Pursuant to § 1391(a), in a case where jurisdiction is based solely on diversity of citizenship, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State," in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

As defendants point out in their motions,[5] Mississippi's connection to this litigation is limited to the fact that three of the Insurance Companies were incorporated in Mississippi years ago; and because they were incorporated here, the Mississippi Insurance Commissioner was appointed receiver for these companies. However, as defendants further note, and the Receivers do not dispute, while these three insurers were incorporated in Mississippi, neither these insurers nor any of the other involved Insurance Companies ever maintained their primary corporate offices in this state. Rather, they all maintained their corporate offices in Franklin, Tennessee. The court in no way seeks to minimize the Mississippi Receiver's obvious interest in a Mississippi forum, but it also recognizes that while there is a Mississippi plaintiff in this case, that is so only by virtue of the fact of three insurers' incorporation in this state; and, contrary to the Receivers' urging to the contrary, the connection between the Receivers' complaint and Mississippi begins and ends there.

Courts often stress that the convenience of witnesses, and especially that of non-party witnesses, is the most important factor in the transfer analysis. *See, e.g., Dor-sey v. Northern Life Ins. Co,* 2005 WL 78937, *5 (E.D.La.2005) (the convenience of witnesses is of primary importance in the transfer calculus); *Langley v. Minnesota Mutual Life Ins. Co.,* 1997 WL 33427093, *1 (N.D.Miss.1997) ("While all the factors are important, courts have routinely placed more emphasis on 'the availability and convenience of witnesses and parties'."); *Apache Prods. Co. v. Employers Ins. of Wausau,* 154 F.R.D. 650, 653 (S.D.Miss.1994) ("The 'most significant factor,' . . . is the convenience of party and non-party witnesses."); *see also Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.,* 844 F.Supp. 1163, 1166 (S.D.Tex. 1994) ("It is the convenience of non-party witnesses, rather than that of employee witnesses, however, that is the more important factor and is accorded greater weight.").

■ The Receivers' complaint relates exclusively to wire transfers from accounts maintained by the Insurance Companies, which were then headquartered in Franklin, Tennessee, from branches of First American (now AmSouth) and First Tennessee located in Franklin and Nashville, Tennessee.[6] It is thus not surprising that many of the prospective witnesses are residents of Tennessee.[7] Indeed, defendants

---

**5.** The court notes that while First Tennessee has adopted AmSouth's arguments in favor of transfer based on the convenience and interest of justice factors under § 1404(a), the primary basis for its own motion is a forum selection clause in a depositor agreement covering the Insurance Companies' accounts with First Tennessee. The court is not persuaded that the referenced forum selection clause ought be given much (if any) weight in the transfer analysis, particularly given that the signature cards for the subject accounts upon which First Tennessee relies as incorporating the depositor agreement containing the forum selection clause were signed in March 1999, a mere two months before Frankel's scheme was exposed. However, the court is convinced that transfer is in order even with-out accounting for this forum selection clause.

**6.** It appears undisputed that First Tennessee is headquartered in Tennessee and does not have any branches in Mississippi. Moreover, while AmSouth now does business in Mississippi as a result of its having acquired Deposit Guaranty National Bank in 1999, it did not do business in Mississippi at the time of the events giving rise to this litigation.

**7.** The court does not conclude that all aspects of the subject transactions were "confined to Tennessee," and recognizes that directives may have been issued from elsewhere, such as from Frankel at his compound in Connecticut. At the same time, the court observes that

have identified numerous material witnesses,[8] including not only certain of their current employees, but also former employees and other non-party witnesses,[9] who reside in Tennessee, most of whom reside and/or work in reasonably close proximity to the federal courthouse in Nashville.[10] Presumably, Amsouth's current employees can be made available for a trial in Mississippi notwithstanding that they are not residents of this state. And although the numerous non-party witnesses identified by AmSouth are not subject to compulsory process to secure their attendance at trial in Mississippi, AmSouth has not affirmatively shown that they would not voluntarily appear for trial in Mississippi under any circumstances; the Receivers, on the other hand, have offered proof that three of these non-party witnesses, namely Lowery, Willis and Porter, would be willing to travel to Mississippi for trial. It is nonetheless manifest that even if all of the witnesses would be willing to attend trial here (and it is not apparent that this is the case), so that the unavailability of compulsory process were no impediment to their appearance, there is no doubt that it would be significantly more inconvenient for them, as well as much more costly for the parties, as well as logistically more difficult for the parties, to have these witnesses travel to Mississippi for trial.[11]

none of the transfers at issue appear to have been initiated from Mississippi or to have had any other connection with Mississippi.

8. The Receivers have moved to strike AmSouth's rebuttal, or portions thereof, or, in the alternative to submit a surreply. In the court's opinion, the request to strike is not well taken. However, the request to file a surreply will be granted.

9. Contrary to the Receivers' suggestion, former employees are properly considered to be "non-party" rather than "party" witnesses; a party has no control over persons with whom it no longer has an employment relation.

10. It appears from AmSouth's submissions that one of the most important witnesses in the case is Rebecca Waldkirch, a former employee of First American. As the person responsible for the bank accounts and wire transfers at issue, she is unquestionably a material witness. She lives near Nashville.

Judith Lowery was an employee and vice president of the Insurance Companies and signed Funds Transfer Agreements with First American. She lives in Tennessee.

Additional witnesses identified by AmSouth as necessary or material witnesses who reside in Tennessee (most in the vicinity of Nashville) include Terry Akin, a former First American bank protection officer; Doug Downey, a former First American employee with knowledge of the transactions at issue; Susan Fowler, a former First American compliance officer and current employee of AmSouth; Norman Martin, Waldkirch's supervisor and area manager for First American, who is a current employee of AmSouth; Wade Willis, a former officer of the Insurance Companies; Billy David Williams, a former managerial employee of the Insurance Companies; Tom Vick, a branch operations supervisor for First American who is no longer employed by AmSouth; and Terry Porter, a former accountant for the Insurance Companies.

11. The distance between Nashville and Jackson is approximately 400 miles. The Fifth Circuit has observed that,

[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

■ There are, of course, other prospective witnesses who live in states other than Tennessee; but *none* of them live in Mississippi, and for all of them, Tennessee is at least as convenient as Mississippi.[12] Based on the foregoing, the private interest factors, thus clearly favor the Tennessee forum.[13]

"Public interest" concerns in the transfer calculus include "administrative difficulties flowing from court congestion," "local interest in having localized interests decided at home," "familiarity of the forum with the law that will govern the case," and "avoidance of unnecessary problems of conflict of laws of the application of foreign law." *In re Volkswagen AG,* 371 F.3d at 203.

Here, there has been no showing that the Middle District of Tennessee is any better positioned, in terms of its caseload, to dispose of this case in a timely manner than is this court (though the court would also note that neither is this court more likely to dispose of the case more quickly than the Tennessee court).

As for the "local interest" factor, the Receivers submit that Mississippi has a strong "local" interest in having the case decided in this forum because a substantial portion of the harm resulting from the losses by the Insurance Companies occurred in Mississippi, because that is where three of the six insurers' were domiciled; and moreover, those losses were born in part by the Mississippi Life and Health Insurance Guaranty Association (MLHIGA), which paid out $46 million in claims to Mississippi policyholders. It is true that the three corporations domiciled in Mississippi suffered harm in Mississippi because these same companies suffered harm in Tennessee, too, where they were headquartered and had employees. Further, the court agrees with defendants that the Receivers' "harm" argument based on the payments by MLHIGA misperceives the Receivers' status in this lawsuit. The Receivers are not suing as representatives of the MLHIGA, or on behalf of the Mississippi policyholders. Rather, they stand in the shoes of the Insurance Companies themselves to assert claims for alleged damages suffered by the Insurance Companies. The damages are not the payments by the MLHIGA, but rather the "$139 million of the Insurance Companies' assets [that] were laundered through and looted from accounts at First American [in Tennessee]," and the "$228 million of the Insurance Companies' assets [that] were laundered through and looted from accounts at First Tennessee [in Tennessee]." Tennessee, thus, has at least as great an interest in the controversy at issue.

Another public interest factor concerns applicable law. The parties are in evident agreement that Tennessee law applies to the controversy; and while that factor alone is hardly dispositive and is in fact of little weight in the overall balance, it still

---

*In re Volkswagen AG,* 371 F.3d 201, 204–05 (5th Cir.2004).

**12.** The court would be remiss were it to fail to acknowledge the Receivers' argument that there are persons in Mississippi who would be material witnesses as to the issues raised by the banks' defense of regulatory negligence. The court does agree with the Receivers that any such witnesses should factor into the transfer equation, yet no one has suggested who those witnesses may be.

**13.** Another consideration that can have a bearing on whether a transfer is in order is the location of documents. Here, that is not a particularly compelling factor, given that it appears that the Receivers' documents, although once housed in Tennessee, are now maintained in a storage facility in Alabama; and the banks' relevant documents, while primarily housed in Tennessee, have already been produced to the Receivers.

is another among many factors which favor a Tennessee forum.

In sum, it is clear from all of the foregoing that the request for a transfer to the United States District Court for the Middle District of Tennessee is well taken and should be granted. Accordingly, it is ordered that defendants' separate motions to transfer are granted.